[No. 37327.   Department Two.   May 13, 1965.]

THE STATE OF WASHINGTON, *Respondent*, v. ADIP NESRALLAH, *Appellant*.*

*Landon R. Estep*, for appellant.

*Charles O. Carroll* and *David W. Soukup*, for respondent.

STAFFORD, J.†—Adip Nesrallah was convicted of grand

*Reported in 401 P.2d 968.

---

†Judge Stafford is serving as a judge pro tempore of the Supreme Court pursuant to Const. art. 4, § 2(a) (amendment 38).

larceny. He and three other men involved a 77-year-old widow in a confidence game and took $6,876 of her life savings. Although appellant was arrested, his confederates were not apprehended.

While confined in the city jail, appellant made two statements and a full written confession that was later recorded on tape. All four exhibits were admitted in evidence at the trial. This is assigned as error.

Exhibit 3 is the written confession; exhibit 1 is the tape recording; exhibit 2 is appellant's request that the police refrain from charging him until April 22nd; and exhibit 4 is appellant's statement identifying pictures of his three confederates.

The trial court conducted a pretrial hearing to determine whether each of the four statements was voluntary. The court followed procedures outlined in Rule of Pleading, Practice and Procedure 101.20W, RCW vol. 0, *Boles v. Stevenson*, 379, U.S. 43, 13 L. Ed.2d 109, 85 Sup. Ct. 174 (1964), and *Jackson v. Denno*, 378 U.S. 368, 12 L. Ed.2d 908, 84 Sup. Ct. 1774 (1964). The jury was not permitted to consider the matter until after the trial judge had fully and independently resolved the issue against the appellant.

Appellant testified that exhibits 1 and 3 were taken while he was being held incommunicado without counsel. He charged that they were involuntary and inadmissible. Exhibits 2 and 4 were not challenged. After hearing the testimony of all witnesses, the trial judge concluded that the statements were voluntary and admissible. His findings and conclusions were reduced to writing pursuant to Rule on Appeal 101.20W, *supra.*

Appellant's assignments of error rely wholly upon favorable testimony given at the preliminary hearing. The findings and conclusions of the trial court are completely ignored. For that reason, the state suggests that this court should reject the assignments of error for failure to comply with Rules on Appeal 42(a)(7) and 43, RCW vol. 0. It is asserted that the findings and conclusions required by Rule 101.20W, *supra*, will have little meaning if they are not con-

sidered in conjunction with Rules on Appeal 42(a)(7) and 43, *supra*. However, even if we assume, without deciding, that appellant's action is an unwarranted nonconformity with reasonable state procedural requisites, *Rhay v. Browder*, 342 F.2d 345 (9th Cir., 1965), it is unnecessary to determine whether failure to assign error to the pretrial findings on the issue of voluntariness waives constitutional rights based thereon. A review of the record is sufficient to indicate that the appellant's challenge is not well taken.

Appellant was arrested at 10 p.m., Tuesday, April 17, 1963. He testified that he was held incommunicado until April 20th, when he gave the police three statements (exhibits 1, 3 and 4). He swore that he demanded an attorney at the time of arrest, although, as a Canadian citizen, he was unacquainted with members of the local bar. He maintained that the police continually denied his repeated requests to have, or even call, an attorney. However, a contradiction is noted. He admitted that he was allowed to call a lady friend (Victoria Heller) at his own request. He asked her to arrange for an attorney. He also acknowledged that Victoria Heller visited him on the 17th, the 18th and possibly twice on Saturday, the 20th of April.

The state's witnesses established that, following the arrest, appellant made several telephone calls to persons of his own choice. Instead of being denied counsel, he asked Victoria Heller to arrange for one. In fact, on the 18th, appellant received a telephone call from a man who identified himself as a Canadian attorney. Furthermore, it was asserted that Victoria Heller visited the jail on numerous occasions and made at least five long distance telephone calls for appellant, on the police telephone.

At first, appellant complained that he had missed meals by being interrogated every day. Later, he admitted that he had been deprived of no meals. In the same vein, he asserted that, during the incarceration, he was sick because of an ulcer. But he acknowledged that he never asked for medical attention and conceded further that the police fur-

nished him with milk to soothe his stomach whenever requested.

Appellant conceded that he voluntarily signed exhibit 2 on April 19th. He explained that Victoria Heller was in the process of contacting a lawyer and calling friends for financial help. He wanted to be held on an "open charge" (without formal charge and without bail) until he received word from her. This is consistent with the state's version. The police testified that they desired to charge him on the 19th, but refrained from doing so at his request. He was said to have explained that he wanted to give his friends ample opportunity to furnish help—but if they did not, he would "blow the whistle on all of them." Contrary to appellant's present assertions, this was not unusual behavior. This "confidence man" wanted to determine whether his "friends" were going to help or abandon him before he attempted to "fix" them.

Appellant testified that, on the 20th of April, Officer Waters told him that he had played around long enough and had better play ball. He said the officer told him that the various police agencies had so much against him he would never see Canada again. This was categorically denied by Officer Waters.

Appellant complained of being threatened with excessive bail as an inducement to make a statement. He averred that the police said they had the power to set bail at $25,000 but would reduce it if he gave them a statement. According to him, they even offered to withhold the notification of other police agencies until he had an opportunity to "skip" on his bail. However, there is a contradiction. Appellant admitted that the police neither threatened him nor made promises or inducements as to the outcome or disposition of the case. He also testified to facts which would indicate that, prior to giving his confession on the 20th (exhibits 1 and 3), he knew bail was only $3,000 and that Victoria Heller was personally attempting to raise it. Thus, his claim of "inducement through excessive bail" was destroyed by his own testimony. This is consistent with the state's ver-

sion. It was acknowledged that appellant was originally concerned about high bail. But, instead of using that fact to threaten him, the police advised him that they had no power to ask for more than normal bail. They also swore that this information was not conditioned upon getting a statement from appellant.

The police acknowledged that appellant made inquiry about the "holds" other law enforcement agencies had against him. But, while this information was furnished at his request, it was not conditioned upon his giving a statement. They also categorically denied any offer to withhold information of his arrest in return for a confession.

Appellant testified that he would not have made a confession had he been able to obtain help from his "friends." That may be true. But it was a condition beyond control of the state. In fact, the manner in which the confession was given was consistent with his threat to "blow the whistle" if his confederates deserted him. If he has had a change of heart at this late date, it does not change the voluntary nature of the confession when originally given.

Appellant said that he was given permission to make some telephone calls on April 20th. He feared that the police lines would be "bugged." Thus, Victoria Heller arranged to have the calls made from a room at the Holland Hotel. The police escorted him to the room from whence the calls were made. The record does not disclose the persons called or their location. However, appellant testified that following the calls he gave the statements (exhibits 1, 3 and 4). There is no adequate proof that permission was given to make the calls as an inducement for the statements. The police officers disagreed with appellant as to the time the telephone calls were made. However, they did agree with the reason for making the trip and with what was done at the hotel.

The foregoing is consistent with the state's contention that appellant intended to "blow the whistle" on any confederates who had abandoned him and is inconsistent with

appellant's present contention that he was held incommunicado until he gave an involuntary confession.

The tape recording (exhibit 1) contained the statement, "You made me promises that I can't mention here." There was no testimony that the police had attempted to retape the confession after the remark was made. Witnesses explained that originally the appellant's comment meant that he had been advised by the police that they had no intention of "going harder on him" because of crimes committed in other jurisdictions and they merely wanted the recording to cover the current charge. Furthermore, the police had explained their lack of power to obtain higher than normal bail and had indicated that they had no intention of requesting it. The officers testified that the foregoing statements were not conditioned upon obtaining a statement from appellant. The explanation is consistent with appellant's concession that the statements had not been obtained by means of coercion, force, threats or promises.

Appellant's brief complained of "secret inquisitorial processes" of the Seattle police. Our attention has not been directed to any proof thereof. We have searched the record and have found none. The complaint is without merit.

The foregoing recitation makes it clear that the trial judge found it necessary to resolve a sharp dispute of fact. We are convinced that the judge weighed the evidence and found appellant's testimony was not entitled to credence. It is not our function to re-evaluate the credibility of witnesses. The trial court's findings and conclusions on the subject of voluntariness are based upon substantial evidence. We will not disturb them. *State v. Gilcrease*, 63 Wn.2d 731, 388 P.2d 962 (1964); *State v. Bell*, 59 Wn.2d 338, 368 P.2d 177 (1962). Neither the record nor the findings and conclusions, based as they are on substantial evidence, support the constitutional violations assigned as error. *State v. Hoffman*, 64 Wn.2d 445, 392 P.2d 237 (1964).

At the pretrial hearing, the trial court refused appellant's request to ask police officers whether Victoria Heller was

the informer who disclosed appellant's confidence game. This is assigned as error.

Victoria Heller was not a witness. Her credibility was not in issue. Whether she was an informer was irrelevant. Furthermore, it bore no relevancy to the voluntary nature of appellant's statements. Although he now appears to be suspicious of her, no one testified that she failed to cooperate with him fully or failed to follow his instructions. Appellant did not testify that some confidential relationship existed or that she induced him in any way to act contrary to his own wishes or best interest.

His relationship with Victoria Heller began before he was known to the police. He voluntarily followed the course he did. While appellant may have placed his trust in a false friend, it was his own choice. The assignment of error is not well taken.

The judgment is affirmed.

ROSELLINI, C. J., DONWORTH, FINLEY, and HAMILTON, JJ., concur.