[No. 38680. Department One. May 11, 1967.]

THE STATE OF WASHINGTON, *Respondent,* v. LESLIE ALLEN
HUSTON, *Appellant.*\*

*\*Reported in 428 P.2d 547.

*Robert D. McGoldrick,* for appellant (appointed counsel for appeal).

*George A. Kain* and *Donald C. Brockett,* for respondent.

SOULE, J.†—On April 28, 1961, Mr. James A. Upchurch, owner and operator of the Park Lane Motel in Spokane, was relieved of some $250 by an armed robber.

On May 5, 1961, the defendant was arrested in El Paso, Texas, on a charge of armed robbery and was thereafter convicted and imprisoned on that charge. Upon his release from Texas custody, he was taken to Illinois to answer a charge pending there, and upon dismissal of the Illinois charge, was brought to Washington in early October of 1965 and brought to trial on November 15, 1965. He was convicted of the Spokane robbery and now appeals.

The defendant's first assignment of error is addressed to the court's admission of certain testimony of the Deputy Prosecuting Attorney, Mr. John Murray. On October 6, 1965, the defendant was taken to Mr. Murray's office for the purpose of interrogation. Prior to asking defendant any questions, Mr. Murray did advise the defendant of his right to remain silent, that anything he said could be used against him, and that he had a right to an appointed attorney. At that point, the defendant did request that an attorney be appointed for him. The defendant complains that the interrogation continued in violation of what he deems to be the limit of *Escobedo v. Illinois,* 378 U.S. 478, 12 L. Ed. 2d 977, 84 Sup. Ct. 1758 (1964). He asserts that having

---

†Judge Soule is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

asked to have an attorney appointed that the deputy prosecuting attorney should have immediately ceased all further questioning.

The subject of the inquiry was twofold. Mr. Murray directed questions to the defendant concerning his presence in Spokane and other matters directly related to the occurrence in question, all of which the defendant refused to answer. However, defendant acknowledged as his two letters written to Mr. George Kain, the Prosecuting Attorney of Spokane County. These letters were written by the defendant while in prison in Texas. The defendant admitted that they were written voluntarily, and admitted that they were written with reference to this charge which was then pending. He does assert that he did not intend them to be used as confessions, but rather, he hoped by them to persuade Mr. Kain to dismiss the charge. In one written in May of 1964, he stated that he would gladly pay the money if he were able. In the one written in February of 1965, he stated that he had committed an unpardonable crime for which he was sorry.

During his conversation with Mr. Murray on October 6, he refused to discuss anything concerning his activities in Spokane until a lawyer was appointed, which was done that afternoon.

Before permitting the jury to hear the evidence, the trial judge made an independent determination pursuant to Rule of Pleading, Practice and Procedure 101.20W, RCW vol. 0, that the letters written to Mr. George Kain were voluntary and that the confirmatory statements made to Mr. Murray were likewise voluntary. No error is assigned to the factual findings of the trial judge or to the sufficiency of the evidence to support them. During the preliminary hearing the defendant Huston stated:

Q. Were the letters written voluntarily by you when in the Texas penitentiary?
A. They were.
Q. You weren't forced to write the letters in any way?
A. No.

Though the broad phrasing of *Escobedo* permits many inferences, its actual holding has been defined for us in *Johnson v. New Jersey*, 384 U.S. 719, 16 L. Ed. 2d 882, 86 Sup. Ct. 1772 (1966). On page 733, the court said:

Apart from its broad implications, the precise holding of *Escobedo* was that statements elicited by the police during an interrogation may not be used against the accused at a criminal trial,

"[where] the investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect, the suspect has been taken into police custody, the police carry out a process of interrogations that lends itself to eliciting incriminating statements, the suspect has requested and been denied an opportunity to consult with his lawyer, and the police have not effectively warned him of his absolute constitutional right to remain silent. . . ."

■ The present case is not one of a man who, at the time of the inquiry in question, was unaware of his absolute constitutional right to remain silent. It is undisputed that he had been so advised and he proceeded to demonstrate his understanding of that advice by speaking only to those things which he chose to speak to and by refusing to talk about other aspects of the charge.

Nor was he denied access to counsel within the context of the facts in *Escobedo*. In that case Escobedo had counsel who was at the police station and who had asked to see him, but the police actively kept them separate. Here counsel was appointed the same day that he was requested. The facts are not parallel and the thought that a simple indication of a desire for the assistance of appointed counsel bars the admissibility of all further immediate conversation, and must be equated with a denial of counsel was then so novel that the trial judge and the deputy prosecuting attorney were not bound to deduce it from the decisions then extant.[1]

---

[1] Since the trial and writing of the appellant's brief, the U.S. Supreme Court has imposed additional restrictions on the questioning of suspects by its decision in *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 Sup. Ct. 1602 (1966). This decision does not affect the admissibility of volunteered statements. Further, the restrictions do not apply to cases tried before June 13, 1966. *Johnson v. New Jersey, supra*.

One can hardly imagine more clearly volunteered statements than those contained in the letters and put in evidence through the testimony of Murray.

It is to be noted that when Mr. Murray did take the stand no further objection was recorded by the defendant, nor was any further motion made directed to the exclusion of his testimony. We find no error in the trial court's admission of the testimony by Murray.

The defendant assigns error to the failure of the court to dismiss the original information which showed on its face that the offense charged had been committed more than 3 years prior to the date upon which the information was filed and which contained no allegation concerning defendant's absence from the state.[2] The amended information contained the necessary allegations concerning that absence and these allegations were based, at least in part, on the statements received by Mr. Murray on October 6, 1965. Since we have concluded that the evidence of these conversations was admissible, there was no error in permitting the amendment. Beyond that, any suggestion that defendant's statements were the only proof available to the state concerning defendant's whereabouts during the critical period is without merit in view of the fact that Spokane County had its hold on the defendant while he was in prison in Texas.

At the time of conducting an inquiry into the admissibility of the statements to Mr. Murray, the court also conducted an inquiry into the admissibility of the testimony of

---

[2] RCW 10.01.020 provides in part: *"Prosecutions* for the offenses of murder and arson, where death ensues, *may be commenced* at any period after the commission of the offense; for offenses the punishment of which may be imprisonment in the penitentiary, committed by any public officer in connection with the duties of his office or constituting a breach of his public duty or a violation of his oath of office, within ten years after their commission; *for all other offenses the punishment of which may be imprisonment in the penitentiary, within three years after their commission;* and for all other offenses, within one year after their commission: *Provided, That any length of time during which the party charged was not usually and publicly resident within this state shall not be reckoned within the* one, *three* and ten *years respectively:* . . . ." (Italics ours.)

George Althoff, a detective for the city of El Paso, Texas. It was to him that the defendant made certain incriminating oral statements concerning his activities in Spokane. These statements were made while he was in custody in El Paso. On conflicting evidence the court made findings that the statements made to Mr. Althoff were voluntary. No clear assignment of error is directed either to the court's findings or to the subsequent admission of the testimony. However, some of the arguments made in support of assignments of error hereafter to be noted seem to be based upon the assumption that the statements to Mr. Althoff did not meet certain standards set forth in *Haynes v. Washington,* 373 U.S. 503, 10 L. Ed. 2d 513, 83 Sup. Ct. 1336 (1963), and thus were inadmissible as a matter of law.

While we are not required to search the record for errors not clearly assigned, the review of a case where a confession is involved presents the reviewing authority with a delicate problem. The trial court has already made a factual determination based upon conflicting evidence. Normally, it is not the porper function of the appellate court to review such findings when supported by credible evidence. *State v. Nesrallah,* 66 Wn.2d 248,401 P.2d 968 (1965).

Yet, we must not blindly accept such findings, particularly where constitutional rights are involved. In *State v. Hoffman,* 64 Wn.2d 445, 392 P.2d 237 (1964), we said:

> [A]lthough we will and do attach significant weight to findings of fact upon disputed issues arising under Rule 101.20W, *supra,* we cannot blindly and conclusively accept such as indisputably establishing the pertinent facts. It is our duty and obligation, where basic constitutional rights are involved, to carefully review the record brought before us and determine therefrom whether the bounds of due process requirements have been exceeded. *Haynes v. Washington, supra; State v. Rutherford,* 63 Wn. (2d) 949, 389 P. (2d) 895. We are mindful, in this respect, that it is not our function to reevaluate the credibility of the witnesses testifying. *State v. Reed, supra* [56 Wn.2d 668, 354 P.2d 935 (1960)]. Our prime concern is that it be convincingly evident from the record that constitutional privileges have not been abused. Strained find-

ings of fact, predicated upon translucent or sophisticated evidence, cannot stand.

An examination of the present record reveals that, although the defendant does not contend that he was physically abused or that he was subject to fear for his person induced by threats, he does contend that he was not advised of his right to counsel or of his right to remain silent or that any statements which he might make could be used against him, or even of the fact that he was under arrest, and he also does complain that he was given certain promises of immunity, that he was influenced by lack of sleep, overlong questioning and the refusal to permit a telephone call.

*Haynes v. Washington, supra,* holds that these are factors which the court must consider in determining whether or not the will of the defendant was overborne as a matter of fact at the time he gave a confession. That decision does not hold that the mere existence of one or more of these factors renders the statement obtained inadmissible as a matter of law if in fact it was voluntarily given.

 It is conceded that Mr. Althoff did not advise defendant of his right to counsel. This does not of itself render the statement inadmissible. There was no indictment or information pending. "[D]ue process does not guarantee an arrested suspect the opportunity to consult a lawyer, absent any request therefor." *State v. Moore,* 61 Wn.2d 165, 170, 377 P.2d 456 (1963). A close reading of the record shows that at the time of the hearing before the court on the voluntariness of the statement, the defendant did not contend that he had asked for, and been denied, the opportunity to consult counsel.

All of the other matters were directly disputed either by the oral evidence of Mr. Althoff or by exhibits 3 and 4 which reflect the formal advice given to the defendant in connection with his statement concerning the Texas offense and which was in his mind before he spoke of the matter in Spokane.

As the trial judge observed, defendant's testimony, if true, would make highly suspect the voluntariness of the statement were there no other factors to consider. However, in resolving the problem of whether or not the statement concerning the events in Spokane was voluntary, the trial judge had the benefit of certain other facts which he and we consider highly significant.

As part and parcel of the events surrounding the interrogation concerning the El Paso robbery and immediately after signing a statement concerning it, defendant was interrogated further and confessed to a "safe job" in Galesburg, Illinois and to an armed robbery in New Mexico, as well as the Spokane robbery. The circumstances of the statements insofar as his relation of them to the El Paso police is concerned were indentical.

Both at the confession hearing and thereafter before the jury, defendant freely characterized his admissions concerning the Illinois and the New Mexico acts as voluntary, all the while inconsistently maintaining that these same circumstances made his statement concerning the Spokane event involuntary.

We recognize the rule to be that stated in *Lynumn v. Illinois*, 372 U.S. 528, 534, 9 L. Ed. 2d 922, 83 Sup. Ct. 917 (1963): "[T]he question in each case is whether the defendant's will was overborne at the time he confessed."

In *State v. Darst*, 65 Wn.2d 808, 815, 399 P.2d 618 (1965), we said: "The essential test is always, Was the confession voluntarily given?"

Because of his admissions concerning his other activities and his own characterization of those admissions as voluntary, together with the letters which he thereafter wrote to the Spokane prosecuting attorney in which he acknowledged the Spokane offense and which he acknowledged at the confession hearing to have been voluntarily written, we think the record amply warrants the conclusion reached by the trial judge that the statement given to Mr. Althoff concerning his actions in Spokane was, in fact, voluntary and not the result of the violation of constitutional rights

or of any overbearing conduct on the part of the police. We do not consider the trial judge's findings to be "Strained findings of fact, predicated upon translucent or sophisticated evidence. . . . " *State v. Hoffman, supra,* at 451.

We note also that the record reflects no exception to the findings of the trial court concerning the voluntariness of the statement to Mr. Althoff nor does it reflect any motion or other effort to prevent Mr. Althoff from testifying before the jury.

With this background concerning the testimony of Mr. Althoff, we consider the third assignment of error which charges that the court improperly admitted exhibits Nos. 3 and 4. Each exhibit is a portion of a written statement given by the defendant to Mr. Althoff concerning the robbery in El Paso. The text relating to the activity in El Paso was removed, leaving only certain information concerning the date, time given, and a formal statutory warning printed on each exhibit. The printed warning is as follows:

> I, Leslie Allen Huston, after having been duly warned by Detective George Althoff, the person to whom this confession is made; FIRST, that I do not have to make any statement at all, SECOND, that any statement made will be reduced to writing and signed by me and may be used in evidence against me on my trial for the offense concerning which this confession is herein made, wish to voluntarily state the following facts for the reason that said facts are true, wiz [*sic*]: . . . .

Since the defendant had already made an issue of the voluntariness of his statement, such evidence was admissible to demonstrate to the jury the extent of the actual information concerning his rights which had been given to the defendant before he was questioned about the Spokane crime.

When the exhibits were offered defendant objected because they contained the detailed statements of the El Paso crime. Such statements were irrelevant and prejudicial. The trial judge exercised sound discretion in removing the irrelevant material.

■ Defendant now complains that by excising the material, the jury was left with the impression that the confessions were too terrible for their eyes and that he was a loathsome person. If such was his concern, he was under a duty to ask for a cautionary instruction advising that the evidence was admitted only for the purpose of showing the extent of his knowledge concerning his rights and that they should consider it for no other purpose. Absent such a request, nondirection is not error. *State v. Cooke,* 59 Wn.2d 804, 371 P.2d 39 (1962).

Defendant also seems to complain because other documents from the file, court's exhibit No. 1, which had been used in connection with the confession hearing in the absence of the jury, were not given to the jury. It is sufficient to say that they were available to the defendant and had he desired to offer any of them, he could have done so.

The defendant's fourth assignment of error relates to the giving of instruction No. 11 in which the elements of the crime were set forth. The critical portion of that instruction is: "(1) That the defendant, Leslie Allen Huston, *on or about the 28th day of April, 1961,* . . . ." (Italics ours.)

■ Defendant urges that where the defense of alibi is presented the defendant is entitled to an instruction pinpointing the exact time of the charge. *State v. Coffelt,* 33 Wn.2d 106, 204 P.2d 521 (1949). The rule is not as broad as that for which the defendant contends. In *State v. Pitts,* 62 Wn.2d 294, 299, 382 P.2d 508 (1963), we held:

> We are now constrained to approve the rule that the state need not, by election, fix a precise time for the commission of an alleged crime, when it cannot intelligently do so. In such case, the defendant will be afforded sufficient time to defend himself and substantiate his defense of alibi. *Assignment of error will support a reversal, if, and when, too flexible an application is prejudicial to a defendant. Each case of necessity must rest on its own bottom.* (Italics ours.)

In the present case, no issue was made of the date of the occurrence. Both parties relied on April 28, 1961. If defendant's position had been that although he had from time to

236

time been in Spokane County, that he was not present in that place on April 28, the date charged, we would agree that the instruction could have been prejudicial. However, at all times, his position has been that he has never been in Spokane County. Under the circumstances, we do not see how the jury could have been misled or how the defendant could have been prejudiced.

The defendant's fifth assignment of error relates to the giving of instruction No. 13 and to the court's refusal to give defendant's proposed instruction covering the same subject. The court's instruction No. 13 is as follows:

Voluntary admissions, if any, made by a defendant charged with crime, when such admissions are not caused by duress or fear produced by threats *or induced by promises* are to be considered by the jury in connection with all the other evidence in the case in determining the guilt or innocence of the accused, and their weight as evidence, like that of any other fact, is to be determined by you alone. *If you find that any such admissions have been made in this case, you have a right in weighing such testimony, to consider all the facts and circumstances connected therewith, which may throw any light upon or aid you in weighing such testimony.* (Italics ours.)

Defendant's proposed instruction was as follows:

"You are instructed that you may give such weight and credibility to any alleged confession of the defendant, in view of the surrounding circumstances, as you see fit."

Instruction No. 13 is designed to comply with RPPP 101.20W (d) (4), RCW vol. 0.[3]

Defendant's offered instruction itself would appear to be sufficient to comply with the requirements of the rule, but it does not follow that instruction No. 13 is improper.

Defendant complains that the first sentence of instruction No. 13 directs the attention of the jury only to admissions induced by duress or fear. This argument overlooks the words "or induced by promises."

---

[3] ". . . (4) if the defense raises the issue of voluntariness under (1) above, the jury shall be instructed that they may give such weight and credibility to the confession, in view of the surrounding circumstances, as they see fit."

Defendant also complains that by using the words set forth in the first sentence that the jury was precluded from considering compulsion of any other nature, or, for that matter, trickery, hope, or sympathy, falsely procured. We fail to see how the jury was precluded from such considerations in view of the broad language of the second sentence, but in any event, if the defendant wished the jury's attention directed to such factors, it was his duty to ask for an instruction specifying the particulars with which he was concerned. *State v. Taplin,* 66 Wn.2d 687, 404 P.2d 469 (1965).

By way of further argument in support of this assignment, defendant argues that a confession obtained after request for counsel is a violation of his right to counsel. So far as this contention applies to the statements of Mr. Murray, we have elsewhere passed upon the matter. So far as the contention applies to the statement to Mr. Althoff, we note again that at the time of the hearing before the trial judge the defendant did not claim that he had asked for, and been denied, counsel. Absent a request therefor, due process does not guarantee an arrested suspect the opportunity to consult a lawyer. *State v. Moore, supra.* He delayed this claim until he appeared before the jury, thus depriving the trial judge of a chance to weigh his claim in ruling on the confession. Having chosen to proceed in this fashion, it seems to us that he waived his right to have this contention considered in determining the status of the confession as a matter of law, and must be content with its consideration as one of the factors to be weighed by the jury in evaluating the evidence.

Sixth and lastly, defendant assigns error to the court's denial of his motion for a new trial, which motion was based upon the grounds "there is no evidence or reasonable inference from the evidence to justify the verdict or decision, and that it is contrary to the law."

The argument in support of this assignment is directed to the quality of the testimony by Mr. Upchurch identifying the defendant.

It is true that Mr. Upchurch described the hair color of his assailant as blond, "rugged blond." He also described the hair as standing straight up, "like he run his fingers through it;" "bushy hair;" "he needed a haircut;" which descriptions varied somewhat from Mr. Althoff's characterization of defendant's hair as dirty brown and from the photograph showing it as lying down.

Description of hair color as brown or blond is often a matter of the speaker's subjective word choice. Hair style can be changed in a large measure by daily care.

On cross-examination Mr. Upchurch also testified that he had previously made an identification from a number of police photos and that when shown defendant's photo he had said, "that's the boy right there" and that at a later time, in October of 1965, he had also identified the defendant in a police lineup in Spokane. He also testified in some detail concerning his opportunity to observe while the robbery was in progress.

Despite the problems which always inhere in identification by an eye witness who is under the pressure of an act of criminal violence at the time he makes his initial observations, this record reveals far more than a "scintilla" of evidence to support the identification. It is sufficient to say that the evidence was substantial and admissible; its weight was for the jury to determine. *State v. Mickens,* 61 Wn.2d 83, 377 P.2d 240 (1962).

The judgment of the lower court is affirmed.

ROSELLINI, HUNTER, and HALE, JJ., concur.