**In the Matter of the Application for a Writ of Habeas Corpus for Larry C. HIGH, Petitioner-Appellant,**

**v.**

**B. J. RHAY, Superintendent, Washington State Penitentiary, Respondent-Appellee.**

**No. 74–1161.**

United States Court of Appeals, Ninth Circuit.

June 18, 1975.

110

Barbara A. Isenhour, Seattle, Wash., John Stait, Univ. of Puget Sound School of Law, Tacoma, Wash., Allen Ressler, Prison Legal Services, Seattle, Wash., for petitioner-appellant.

Slade Gorton, Atty. Gen., Olympia, Wash., for respondent-appellee.

## OPINION

Before LUMBARD,* KOELSCH and WRIGHT, Circuit Judges.

LUMBARD, Circuit Judge:

Larry C. High, who is presently serving a sentence of twenty years in a Washington state prison following his convictions in August 1971 for rape, sodomy, and assault in the second degree, appeals from an order of the district court for the Western District of Washington, Sharp, J., denying his petition for a writ of habeas corpus.

After hearing argument on November 14, 1974, this court, on February 4, 1975, affirmed the order of the district court, with one judge dissenting. Thereafter, High petitioned for re-hearing and upon reconsideration this court is of the opinion that the petition should be granted and that the order of the district court should be reversed. Accordingly the opinion of February 4, 1975 is vacated.

We find that High has not been accorded due process and equal protection of the laws, in view of the state's failure to see that on his criminal appeal High had legal representation which complied with the requirements of Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), and accordingly, we reverse.

I.

High was tried in August 1971 in the Superior Court of Kitsap County, Wash-

* Senior Circuit Judge for the Second Circuit, sitting by designation.

ington, and was represented by retained counsel. The trial record discloses sharp issues of fact in the testimony of the defendant and the testimony of the complainant who alleged that on April 13, 1971, High forced her to commit sodomy and then raped her. The case was tried to a judge, without a jury, and his finding of guilt delivered from the bench at the conclusion of the trial discusses in some detail the discrepancies in the state's case and in the testimony of the defendant.

By the time of his appeal from this conviction, High was indigent, and James Munro, Esq., was assigned by the trial (Superior) court to represent him. On January 17, 1972, Munro filed a four-page "Brief of Appellant," which is set forth in full below.[1] In this brief counsel did not make even a minimal statement of the facts which were relevant to the appeal. The single "Assignment of Error" was that the trial court erred in finding the defendant guilty. In a three-sentence, eighty-five-word section entitled "Argument of Counsel," the court was simply invited to review the transcript to determine whether the evidence established that High was guilty beyond a reasonable doubt. Munro also

---

1.  BRIEF OF APPELLANT
   STATEMENT OF THE CASE

"The Defendant larry [sic] C. High, who was represented by retained counsel William H. Fraser of Bremerton, Washington, an experienced trial lawyer and former Deputy Prosecuting Attorney of Kitsap County, was charged in the Third Amended Information Tr. 1, waived his trial by jury Tr. 3, and was tried and found guilty by the Honorable Jay W. Hamilton, Judge of the Superior Court of Kitsap County, Tr. 4 and Tr. 8. After being found guilty, he desired to prosecute an Appeal and being without funds an order was entered authorizing the expenditure of public funds for the cost of Appeal Tr. 11. On February the 1st, 1971 the present counsel for Mr. High took over all of the public defense of the felony cases in Kitsap County on an experimental basis. Upon being informed that he had been assigned to the Appeal of Larry C. High, counsel obtained the files from Mr. Fraser and contracted Mr. High who was at that time incarcerated in the Washington State Penitentiary at Walla Walla. A considerable amount of correspondence ensued between appointed counsel, Larry C. High and Judge Jay W. Hamilton. From this correspondence it was difficult to determine from day to day if Mr. High desired to be represented by the appointed counsel, or if he was going to obtain counsel of his own choice. Finally, in a letter written on December 26, 1971, Mr. High informed counsel that he desired to have him proceed in this matter. Counsel for the appellant has carefully read the Statement of Facts in this case and has discussed the matter of this Appeal with Mr. William H. Fraser. Mr. High has also indicated to counsel his ideas of where the Court erred in this matter. Mr. High's list of the Court's errors may be summarized as follows:

1. He was not advised of this [sic] rights.
2. He was never put in a line-up.
3. That the complaining witness was mistaken in her identification of him as the one who committed the crimes.
4. That the complaining witness testified that part of her statement had been given to her by one of the detectives.
5. That there is a discrepancy between the testimony of Detective Dean and the complaining witness.
6. That the presiding Judge was prejudiced against him because the Judge knew the complaining witness' father and because of the appellant's knowledge of corruption in the Prosecutor's office and the Sheriff's department.
7. That the closing argument of the Prosecuting Attorney was prejudicial as it indicated to the Court that the Prosecuting Attorney's office had had no contact with the defendant since 1966, whereas in fact on the 10th day of October, 1970, the Prosecutor's office had filed five (5) charges against him which were later dismissed in February of 1971 when the prosecuting witness changed her mind and would not testify against him.

Due consideration has been given to these matters by the appellant's counsel.

ASSIGNMENTS OF ERROR

"That the lower Court erred in finding the defendant guilty.

ARGUMENT OF COUNSEL

"The sole question before the Court at this time is whether or not there was sufficient evidence as to the guilt of Larry C. High, which when considered with the testimony of the defendant and his witnesses could convince a reasonable mind beyond a reasonable doubt that the defendant was guilty of the crimes charged.

"The only answer to this question is for the Court to review the Transcript of this case and the Statement of Facts. The matter is therefore respectfully submitted to the Court.

Attorney for Appellant"

(Transcript 17–20.)

listed in his "Statement of the Case" seven additional claims of error which High had urged him to make. He stated that he had given these issues "due consideration," but he did not include them in the section entitled "Assignment of Error." After submitting this brief, Munro waived oral argument.

High was not satisfied with this brief and moved to have Munro discharged and new counsel appointed. At no time did Munro himself seek to withdraw. The Washington Court of Appeals denied High's motion. High then filed his own hand-written, forty-page supplemental brief, as well as a reply brief in response to the state's brief. The Washington Court of Appeals, in an eight-page unpublished opinion, affirmed High's conviction. The court reviewed the transcript and found the evidence sufficient to sustain the conviction. It also specifically addressed High's other arguments which had been noted by Munro and argued by High in his own brief. Following this decision, High's pro se petition for rehearing was denied, and the Washington Supreme Court denied a pro se petition for review. Subsequently High brought a state petition for a writ of habeas corpus, which was also denied.

Having exhausted state remedies, High brought the present habeas corpus petition in federal court, alleging primarily that he had inadequate legal representation at trial and on appeal.[2] The district court, having reviewed the trial transcript, concluded that High was ably represented at trial. With respect to High's representation on appeal, the district court stated that the constitutional standards set forth in *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), are reduced if the appeal presents no substantial constitutional question. It found that the brief filed by Munro was not so ineffective as to violate *Anders* or to make the appeal a farce or mockery of justice. This appeal followed, with appellant being represented by the Legal Services Center of Seattle.

## II.

The sharp conflict between the testimony of the defendant and the complaining witness, coupled with the numerous discrepancies in the state's case, forms at least the basis for a *non-frivolous* argument that the evidence did not establish guilt beyond a reasonable doubt. There is no indication that counsel considered such an argument frivolous. By making insufficiency of the evidence his sole assignment of error, Munro distinguished it from the seven other issues High sought to have him argue.

■ Appointed counsel, in such a situation, has a duty under *Anders* not only to raise such a non-frivolous argument, but to advocate it conscientiously on appeal. *Anders v. California,* 386 U.S. at 744–45, 87 S.Ct. 1396; *see* ABA Standards, Criminal Appeals § 3.2(b)(ii) (1970) and commentary thereto. The very nature of the case required the consideration of much of the often conflicting evidence in order to decide whether the evidence could support a finding of guilty beyond a reasonable doubt. Moreover, even if Munro had thought that the argument and the appeal were frivolous, he still would have had a duty, under *Anders,* to advise the court of anything in the record which might arguably support the appeal. 386 U.S. at 744–45, 87 S.Ct. 1396; *see Vanhook v. Craven,* 419 F.2d 1295, 1296 (9th Cir. 1969). This guards against any temptation on the part of appointed counsel to discharge an obligation to the client in a summary fashion, *see Nickols v. Gagnon,* 454 F.2d 467, 470 (7th Cir. 1971), *cert. denied,* 408 U.S. 925, 92 S.Ct. 2504, 33 L.Ed.2d 336 (1972), and enables the court to review the record itself more effectively, *see Anders v. California,* 386 U.S. at 745, 87 S.Ct. 1396.

■ Here Munro, in three sentences, merely stated the simple question of the

---

**2.** High also charged that the state had knowingly used false evidence and that there existed numerous errors at trial which amounted to a deprivation of due process. These claims were also considered and rejected by the district court.

sufficiency of the evidence and invited the court to review the entire transcript itself. On these generalities he submitted the case to the court without oral argument. Counsel failed to make even a minimal statement of the facts which are relevant to the issues on appeal. The "brief" is worthless. It could not have required more than five minutes to draft. No client in his right mind would pay one cent for such a performance. It is difficult to understand how the Washington Court of Appeals could accept such a brief and thereafter deny High's motion to relieve Munro and to designate new counsel. There is no indication that that court felt that High's appeal was wholly frivolous. And even under *Anders* a court hearing the first appeal from a criminal conviction should still have before it a "brief" by counsel referring to anything in the record which might arguably support the appeal before making a determination that that appeal is wholly frivolous. High's own pro se briefs were no adequate substitute for the advocacy of experienced counsel. In accepting Munro's "brief" and in denying High's motion to have Munro discharged and new counsel appointed, the state court failed to follow the clear mandate of *Anders*.

■ The district court, which denied High's petition for a writ of habeas corpus, erred when it stated that the requirements of *Anders* are lower where there is no substantial constitutional question involved in an appeal. Whether issues to be raised by counsel are of constitutional dimension is irrelevant for the purposes of *Anders*, which was concerned with the adequacy of a defendant's representation in raising whatever argu-

ments can be made on appeal for either reversal or a new trial.

■ It is true that the Washington Court of Appeals has given careful and thorough consideration to the very points which assigned counsel could make on a second appeal from High's conviction. It is also true that the probabilities are that any review of the record, in light of all the arguments which diligent and experienced counsel may make for High, will still result in affirmance of the conviction. Nevertheless, High has a right to have an advocate present his case to the Washington Court of Appeals.[3] Under our adversary system, it has become a well-established principle that there is no substitute for counsel who acts as an advocate and who makes the best arguments he can on the facts and the law. *Anders v. California*, 386 U.S. 738, 744, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). The appellant may not be deprived of the benefit of such appellate representation because his court-appointed counsel fails to perform his clear duty.

The decision of the district court is reversed and the case remanded to the district court, which is directed to grant the writ of habeas corpus unless within a reasonable time the state assigns new counsel and the appeal from High's 1971 convictions is heard and considered again.

EUGENE A. WRIGHT, Circuit Judge (dissenting):

Respectfully, I dissent. Judge Lumbard has skillfully recited the facts and has commented on the worth of the brief filed with the Washington Court of Appeals. I agree that the brief is not an example of appellate advocacy at its

---

3. Certainly High's chances of success on the subsequent appeal are as great or greater than were Anders after his Supreme Court victory. See *Anders v. California*, 386 U.S. 738, 746 n.*, 87 S.Ct. 1396 (Stewart, J., dissenting). There the majority noted as evidence of possible prejudice that neither counsel nor Anders had assigned as error the fact that both the trial judge and the prosecutor had commented on the defendant's failure to testify. However

Anders' state court appeal was decided in 1959, six years before *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). See *Anders v. California*, 386 U.S. at 746 n.*, 87 S.Ct. 1396 (Stewart, J., dissenting). Even adequate counsel in 1959 might not have raised a question about seemingly settled law which permitted states to allow their prosecutors to comment on a defendant's failure to take the stand.

best. But, I see in this record that Mr. Munro found himself in a dilemma.

He could not say that the appeal taken by his client was frivolous, or lacked all merit. In such a case he would, we presume, have petitioned for withdrawal. Rather, counsel set forth the arguments of his client, and stated that he had "carefully read" the record, and had given "due consideration" to his client's arguments. Counsel then went on to set forth as the "sole question," whether or not there was sufficient evidence to sustain the verdict.

Obviously he did not *feel* that there was any merit to any of the points raised by his client, for if he had, he would have raised such issue, together with the evidentiary one, in his brief. Yet counsel at the same time may not have been able to *find* the appeal to be wholly without merit or frivolous, so as to justify a petition for withdrawal under *Anders.*

I certainly cannot say, in any event, that counsel did not "support his client's appeal to the best of his ability," which is the *Anders* standard, 386 U.S. at 744, 87 S.Ct. at 1400.[1].

Appointed counsel's appraisal of the case was substantiated by two Washington appellate courts and the district court below. The Washington Court of Appeals might well have returned the brief of appointed counsel and requested him to expand it, cite legal authorities or support appellant's contentions with references to the record. The court did not do so. Instead, it looked carefully at each of the assignments of error in counsel's brief and in High's pro se brief, examined the record of the trial, considered the effect of nine applicable Washington cases, and concluded that appellant's trial had been fair and that his contentions were not supported by the record or applicable law.

The majority opinion notes that the Washington Court of Appeals "has given careful and thorough consideration to the very points which assigned counsel could make on a second appeal from High's conviction." The Washington court did more than that.

In an eight-page opinion, that court made a detailed analysis of the trial court's findings of fact, the evidence supporting each, the arguments advanced by the appellant, and the controlling legal authorities. In the course of its thorough opinion affirming the trial court, the Washington Court of Appeals made the observations set forth in the margin.[2]

---

1. Also, it should be noted that counsel's waiver of oral argument was under the circumstances quite proper. ABA Standards § 3.2(b)(ii). *See also State v. Ortiz,* 98 Ariz. 65, 402 P.2d 14, 16 (1965).

2. "We have thoroughly reviewed the record before us, and conclude that there is substantial evidence to support the trial court's findings of fact. We have considered the assignments contained in defendant's handprinted supplemental brief. Each of these assignments that predicate error in the findings has been considered fully and found to be without merit. Each of the defendant's arguments has also been considered and rejected.

"The next question for review is whether the arresting officer's failure to give *Miranda* warnings before questioning the suspect constitutes prejudicial error. At the outset, we note that during the trial the state did not introduce any evidence of a confession or statement against interest made by the defendant at any time. The conversation between the arresting officer and the defendant, as well as the arresting officer's written report of the conversation, was elicited by defense counsel on cross-examination of Detective Dean. Moreover, the conversation and reports so introduced are devoid of any inference of guilt. * * * As the Supreme Court stated in *State v. Baker,* 78 Wn.2d 327, 474 P.2d 254 (1970) at page 331: 'An error, considered in a vacuum, does not give rise to an automatic reversal of a judicial determination. There must be some nexus with a right of the defendant substantially abridged by the error.'

\* \* \* \* \* \*

"The defendant contends that he was indigent, was not informed of his right to appointed counsel, and was questioned in the absence of counsel. The uncontradicted evidence in the record before us indicates that at the time of his arrest the defendant informed the police not only that he was represented by counsel, but also who that attorney was. Detective Dean's further questioning of the defendant without the presence of

After High lost on that appeal, he petitioned for rehearing. His three-page petition cited numerous state and federal cases and argued that the evidence was insufficient to support the conviction. The Washington Court of Appeals denied that petition and the Washington Supreme Court subsequently denied High's pro se petition for review.

In his petition to the federal district court for writ of habeas corpus, appellant raised three issues: (1) incompetence of counsel, both at trial and on appeal; (2) that the state knowingly used false evidence; and (3) that there existed numerous small errors at trial amounting to a deprivation of due process.

In his order dismissing the petition, the district judge gave serious attention to the question of adequacy of counsel. He thoroughly reviewed the trial transcript and concluded that appellant was ably represented at trial. He also concluded that the state judge's findings of fact were correct on the photographic identification issue and that there was sufficient evidence to uphold the conviction. Appellant does not argue these points before us and has concentrated our attention on the adequacy of counsel in the state appellate process.

Considering the "careful and thorough consideration" already given by the Washington courts to the points already made and which could be made on High's behalf, I see no need to remand for another appeal through the state system. If appointed counsel on the first appeal was not much of an advocate, the state appellate court more than made up for his deficiencies. Under these circumstances, I don't believe that the *Anders* decision requires more.

---

the defendant's counsel was unquestionably improper. The fact remains, however, that defendant did not confess nor inform the police of any material fact not already in their possession. We have no hesitancy in declaring that Detective Dean's impropriety constitutes harmless error, beyond a reasonable doubt. *State v. Nist,* 77 Wn.2d 227, 461 P.2d 322 (1969).

"Finally, we take up the photo lineup issue. * * * The trial court in two separate oral rulings reviewed the photographic identification procedure employed by Officer Brown and Detective Dean, and concluded that Mrs. Strand's identification of the defendant's picture while the defendant was not yet in custody was not accompanied by impermissible suggestions from the police. Constitutional facts must be reviewed de novo on appeal, but the credibility of witnesses may not be reevaluated. *State v. Huston,* 71 Wn.2d 226, 428 P.2d 547 (1967); *State v. Cashaw,* 4 Wn.App. 243, 480 P.2d 528 (1971). Our review of the record convinces us that Mrs. Strand's in-court identification of the defendant was not tainted by improper pretrial suggestion from the police. From the record before us, we are unable to say that there is a very substantial likelihood of irreparable misidentification.

       *    *    *    *    *    *

"The first argument is that Mrs. Strand's testimony establishes impermissible influence on her identification. We disagree. Even if we accept Mrs. Strand's version as true and disregard the policemen's testimony, the procedures employed did not taint the subsequent in-court identification. * * * Moreover, even though the crime was committed at night and Mrs. Strand's vision may have been impaired by the chemical sprayed in her face, the very nature of the crime assured her of a very good opportunity to observe the defendant's facial features. There is no evidence that her vision was substantially impaired. On the contrary, she described her assailant, his bedroom, his car, his house, all with a high degree of accuracy. We reiterate that under the circumstances we cannot say that there is a very substantial likelihood of irreparable misidentification at the subsequent in-court proceeding. [citation omitted]

       *    *    *    *    *    *

" * * * We have completely reviewed the record and find no convincing evidence of a conspiracy to convict defendant of a crime *that he did not commit.* On the contrary, our review indicates clearly that the defendant's guilt was established in a proper and constitutional manner."

*State v. High,* Washington Court of Appeals, Division Two, Oct. 6, 1972 (unpublished opinion).