[No. 13718–2–I. Division One. October 7, 1985.]

THE STATE OF WASHINGTON, *Respondent,* v. HARLAN
HENRY HAHN, *Appellant.*

*Raymond H. Thoenig* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Celeste Stokes, Deputy,* for respondent.

RINGOLD, J.—The defendant, Harlan Henry Hahn, appeals the judgment and sentence imposed after he was convicted by a jury for second degree felony murder. He asserts that the trial court erred in finding him competent to stand trial, and competent to waive his right to plead not guilty by reason of insanity (NGI), and his right to counsel. We reverse because there is inadequate evidence of a knowing and intelligent waiver of the right to counsel.

Hahn was charged with causing the death of 84–year–old Elmer C. Commet in February 1983. On March 4, 1983, the court ordered a psychiatric evaluation of Hahn because of his apparent delusions. He was diagnosed as paranoid schizophrenic and "floridly psychotic" upon his initial admission to Western State Hospital. On March 18, 1983 he was found incompetent to stand trial. Hahn believed that he was a secret agent involved in covert investigations of the Boeing Company, the Rockwell Corporation, and voting fraud in the Reagan election. He also believed that he was involved in other covert operations "too secret to

mention" because "we are in a cold war."

At a second hearing, on May 19, 1983, Hahn was found competent to stand trial and entered a plea of not guilty. Roy Howson, Hahn's appointed counsel, agreed with the Western State Hospital staff report that Hahn was competent to stand trial at that time.

Hahn rejected the State's offer to stipulate to an NGI plea. The NGI plea was later entered over the defendant's objections, but was stricken after *State v. Jones,* 99 Wn.2d 735, 664 P.2d 1216 (1983) was filed. The court found that Hahn met the *Jones* standard, and was competent to waive the NGI plea. Hahn also asked to appear pro se because of secret information relating to his covert activities which he did not want to reveal to his attorney, but which "could be important at trial." After urging Hahn several times not to proceed pro se, the court found a knowing and intelligent waiver of the right to counsel. Howson was appointed as Hahn's legal adviser and assisted him throughout the trial, but Hahn made the opening and closing arguments and examined witnesses.

Hahn testified that he had lived with Commet for a short time until Commet said, "The only mistake Nixon ever made was not having your mother killed before you were born." Hahn said this remark upset him and he "couldn't get it out of [his] mind." Hahn said that he met Commet on the street that evening and Commet "lunged" at him, making him believe that Commet was going to harm him. He "whirled around" three times, striking Commet each time with his briefcase. Then he gave Commet a "karate chop" and kicked him. The State presented evidence that Hahn went into Jerry's Tavern after the incident and said he had killed a man. A police officer testified that Hahn told him he wanted to "shut Commet up for once and for all" and that he couldn't forget Commet's remark about his mother.

At the close of the evidence Hahn objected to the "to convict" instruction because it included the phrase "felony assault" while the information merely said "assault." After

argument by both sides, the court found that no substantial rights of the defendant would be affected and allowed amendment of the information. The jury was instructed on self–defense and returned a verdict of guilty of second degree felony murder.

## Competency To Stand Trial
### and Waive NGI Plea

Hahn first argues that the trial court erred in finding him competent to stand trial and to waive the NGI plea. He contends that, at a minimum, the trial court should determine and consider the defendant's education, literacy, verbal fluency, and any physical or psychological disabilities affecting the ability to communicate a defense to the jury. *Pickens v. State*, 96 Wis. 2d 549, 292 N.W.2d 601 (1980); *see also* RCW 10.77.060(1). He asserts that he was not competent under this standard.

█ Competency determinations are within the sound discretion of the trial judge, whose decision will be reversed only for abuse of discretion. *Young v. Smith*, 8 Wn. App. 276, 279, 505 P.2d 824 (1973). The appellate court, however, must make an independent review of the record to ensure that the defendant's constitutional rights were not abridged. *State v. Huston*, 71 Wn.2d 226, 231, 428 P.2d 547 (1967).

█ The same level of competency is necessary to stand trial and to waive the NGI plea. *Jones,* at 746. A defendant is competent to stand trial when he or she understands the nature of the charges and is capable of assisting in the defense. RCW 10.77.010(6), *cited in State v. Wicklund,* 96 Wn.2d 798, 800, 638 P.2d 1241 (1982); *Jones,* at 746. This includes "the same ability to understand and choose among alternative defenses which is necessary to intelligently and voluntarily waive the insanity defense." *Jones,* at 746.

Hahn's counsel stated at the competency hearing that Hahn was capable of assisting in the defense. The psychiatric evidence also supports a finding of competency. While Hahn was apparently delusional about his role as an

undercover agent, his testimony indicates that he understood the nature of the charge and recalled the events in question. The trial court finding that Hahn was competent to stand trial is supported by the record.

Once it is determined that a defendant is competent to stand trial, "the only permissible inquiry" relevant to waiver of the insanity defense is whether the decision is intelligent and voluntary. *Jones,* at 746.

> If the court finds that the defendant is competent to stand trial but that his decision to forgo an NGI plea is not intelligent and voluntary, it should provide him with whatever additional information or assurances are necessary to enable such a decision. In only the rarest of cases, if ever, will it be impossible to make the decision intelligent and voluntary and hence be necessary to enter an NGI plea sua sponte.

(Footnote omitted.) *Jones,* at 747.

The trial judges here questioned Hahn about his decision to waive the plea, and warned him that the "average citizen" would probably not believe that he was involved in covert operations. The court further warned Hahn that "you're giving up the kind of potential disposition of your case through a finding of insanity that would keep you out of prison." Hahn replied that he "understood very thoroughly" and definitely did not want an insanity plea. After consideration of *Jones,* the court withdrew the NGI plea and allowed Hahn to enter a plea of not guilty by reason of self–defense.

Hahn's waiver of the NGI plea was induced at least in part by the same paranoid delusion that led him to commit the crime. He believed that his actions were justified as self–defense because he was protecting secret information vital to the "cold war." *Jones* makes clear, however, that an insane defendant may waive the NGI plea:

> *State v. Khan,* 175 N.J. Super. 72, 417 A.2d 585 (1980) appears to suggest that the defendant's refusal to recognize that he *is* insane might prevent him from making an intelligent and voluntary decision. *See Kahn,* at 83. We see no reason, however, why this would prevent a compe-

tent defendant from understanding that, despite his own disbelief, a jury might find him insane.

*Jones,* at 747 n.4. The *Jones* court elaborated on the test for a knowing and intelligent waiver, stating:

> This requires the trial judge to "conduct an inquiry designed to assure that the defendant has been fully informed of the alternatives available, comprehends the consequences of failing to assert the [insanity] defense, and freely chooses to raise or waive the defense."

*Jones,* at 745 (quoting *Frendak v. United States,* 408 A.2d 364 (D.C. 1979)). The trial judge made such an inquiry, and the record adequately establishes that Hahn made a knowing and intelligent waiver of the NGI plea.

## COMPETENCY TO WAIVE COUNSEL

 A higher level of competency is necessary to waive the right to counsel guaranteed by the state and federal constitutions.[1] *Westbrook v. Arizona,* 384 U.S. 150, 16 L. Ed. 2d 429, 86 S. Ct. 1320 (1966); *Jones,* at 746. A defendant has a constitutional right to appear pro se, but this right is counterbalanced by other constitutional rights, such as the right to an attorney and to a fair trial, which a defendant may forfeit in exercising a right to appear pro se. *Faretta v. California,* 422 U.S. 806, 835, 45 L. Ed. 2d 562, 95 S. Ct. 2525 (1975). A defendant must be warned about the dangers of proceeding pro se and must make a knowing and intelligent waiver of that right. *Faretta,* at 835; RCW 10.77.020. The validity of a defendant's waiver depends on the particular facts and circumstances of each case. *Johnson v. Zerbst,* 304 U.S. 458, 464, 82 L. Ed. 1461, 58 S. Ct. 1019, 146 A.L.R. 357 (1938).

The basis for a waiver of counsel must be firmly established by a searching inquiry on the record. *Bellevue v. Acrey,* 103 Wn.2d 203, 691 P.2d 957 (1984). Generally, the

---

[1] U.S. Const. amend. 6: "[T]he accused shall enjoy the right . . . to have the assistance of counsel for his defense." Also, Const. art. 1, § 22 (amend. 10) provides: "In criminal prosecutions the accused shall have the right to appear and defend in person, or by counsel . . ."

"question ultimately is the *subjective* understanding of the accused rather than the quality or content of the explanation provided . . ." *State v. Chavis,* 31 Wn. App. 784, 790, 644 P.2d 1202 (1982); *see also State v. Imus,* 37 Wn. App. 170, 173, 679 P.2d 376, *review denied,* 101 Wn.2d 1016 (1984); *State v. Brasel,* 28 Wn. App. 303, 623 P.2d 696 (1981). The trial judge "should question the accused in a manner designed to reveal *understanding,* rather than framing questions that call for a simple 'yes' or 'no' response." *Chavis,* at 790.[2]

A variety of factors are relevant to the ability to make a "sensible, intelligent decision regarding self-representation." *Acrey,* at 211; RCW 10.77.020. Among these factors is the defendant's mental health. 1 American Bar Ass'n, *Standards for Criminal Justice,* Std. 5–7.2 (2d ed. 1980) provides in part that "No waiver should be found to have been made where it appears that the accused is unable to make an intelligent and understanding choice because of mental condition, age, education, experience, the nature or complexity of the case, or other factors." *See also* Annot., *Accused's Right To Represent Himself in State Criminal Proceedings—Modern State Cases,* 98 A.L.R.3d 13, § 11(c) (1980). Mental health is especially important where, as here, the defendant's paranoia induces both the commission of the charged offense and the desire to waive counsel.

Other jurisdictions have considered the effect of the defendant's mental condition on the ability to make a

---

[2]The following statement from *State v. Imus,* 37 Wn. App. 170, 181, 679 P.2d 376 (Ringold, J., dissenting), *review denied,* 101 Wn.2d 1016 (1984) applies as forcefully here: "[The court's] dissenting opinion is not meant to reflect any criticism of the experienced and careful trial judges who ruled on this difficult issue. We are here confronted with two apparently conflicting rights emanating from the right to counsel guaranteed to an accused by the United States Constitution and the Washington State Constitution. Like so many issues in criminal law, this is a changing area in which courts are considering new issues, standards, and criteria affecting the entire system of justice. Until *Faretta v. California,* 422 U.S. 806, 45 L. Ed. 2d 562, 95 S. Ct. 2525 (1975) was decided, there was no authoritative rule that self–representation is a constitutional right implied from the accused's right to counsel. Standards are still being formulated by which a proper balance may be devised and followed by the courts."

knowing and intelligent waiver of the right to counsel. In *United States ex rel. Martinez v. Thomas,* 526 F.2d 750, 753 (2d Cir. 1975), the court reversed the conviction of a defendant with a "long history of mental problems" and a low IQ, stating that "we cannot agree that a person in [the defendant's] mental condition is likely to have made an intelligent waiver of the right to counsel." *Martinez,* at 756. An Arizona court similarly found that the defendant was "too emotionally disturbed to make a knowing waiver." *State v. Doss,* 116 Ariz. 156, 160, 568 P.2d 1054, 1058 (1977). When a paranoid defendant wanted to represent himself, a California court found that the trial judge properly denied a petition to appear pro se. *People v. Salas,* 77 Cal. App. 3d 600, 143 Cal. Rptr. 755 (1978).

The Minnesota Supreme Court held that the defendant's constitutional rights to a fair trial and due process were not adequately protected when the court allowed him to proceed pro se because of a paranoid mistrust of the judicial system. *State v. Bauer,* 310 Minn. 103, 245 N.W.2d 848 (1976). The defendant believed that his appointed lawyer was against him and would not let him present his case, and that the whole judicial system was biased. The appellate court considered the seriousness of the charge, the complicated NGI defense, that the defendant's claim of self–defense "was irrational and not a legal defense", and the defendant's paranoia, then found that the waiver of counsel was not knowing and intelligent. *Bauer,* 245 N.W.2d at 859.

Similarly, here, Hahn was confronted with a complicated trial on a serious charge. His claim of self–defense was no more rational or viable than that of the defendant in *Bauer,* and his desire to act pro se was induced by his paranoia, as in *Bauer* and *Salas.*

Hahn's education and experience are not ascertainable from this record; his claim of having attended "several law schools" is not supported by any other evidence and may be part of his paranoid fantasies. His mental condition infringed on his ability to waive counsel because his para-

noia led him to believe that he had secret information which he did not wish to reveal to an attorney, but which might be relevant to his defense. Nothing in the record before us indicates that any of the judges involved in making the competency decisions inquired about Hahn's education, literacy, background or prior courtroom experience. There is some indication in the record that Hahn was committed to a mental hospital in California in 1980, but this was not followed up, nor did the court question Dr. Trowbridge about his previous experience with Hahn. There are no inquiries in the record about Hahn's treatment either before or after the offense, or about any medication he may have required to attain competency. The need for further investigation of Hahn's competency was pointed out to the court by amicus, who suggested "the Court should have to inquire not just as to the intelligence necessary and the voluntariness of the waiver, but also perhaps make sure that the competency portion of the interrogation is repeated." The questions that were asked primarily required the kind of "yes" or "no" responses criticized in *Chavis,* and do not establish Hahn's understanding of the importance of waiving counsel.[3]

The record does not affirmatively establish that Hahn made a knowing and intelligent waiver of counsel. Hahn's right to a fair trial and due process were violated when he was allowed to proceed pro se, and "society's interest in a fair trial" was not served. *Faretta,* at 835. Our disposition of this issue makes it unnecessary to consider Hahn's other

---

[3]After determining competency to stand trial, the court might profitably consider further psychiatric or psychological testimony directed specifically at the question of whether the defendant meets the higher standard of competency necessary to waive counsel. If necessary, the matter could be stayed pending further investigation by the mental health professionals involved. This would not only provide further information and assist in determining whether the defendant in fact meets the higher standard, but would present a fuller record on review substantiating the reasons for the trial court decision.

assignments of error.

The judgment and sentence are reversed and the cause is remanded for a new trial.

CORBETT, C.J., concurs.

WILLIAMS, J. (dissenting)—By the majority opinion, Hahn is determined to be competent to stand trial. He is likewise permitted to refuse to avail himself of the insanity defense even though this "was induced at least in part by the same paranoid delusion that led him to commit the crime." Majority, at 880. Then, as to dispensing with the service of counsel, it is decided that Hahn did not make a "knowing and intelligent" waiver because of his mental health which "is especially important where, as here, the defendant's paranoia induces both the commission of the charged offense and the desire to waive counsel." Majority, at 882.

The basic rule concerning waiver of the right to counsel guaranteed by the federal and state constitutions is stated in *State v. Chavis*, 31 Wn. App. 784, 787, 644 P.2d 1202 (1982):

> Generally, a defendant in a criminal case who is sui juris and mentally competent has the right to conduct his defense in person, without assistance of counsel. *Faretta v. California*, 422 U.S. 806, 45 L. Ed. 2d 562, 569, 95 S. Ct. 2525 (1975). Whether a valid waiver of counsel exists is within the discretion of the trial judge. *State v. Kolocotronis*, 73 Wn.2d 92, 102, 436 P.2d 774 (1968); *State v. Fritz*, 21 Wn. App. 354, 361, 585 P.2d 173, 98 A.L.R.3d 1 (1978). In *Fritz*, the court set forth basic principles for asserting and implementing the right of self–representation. Among those principles is the necessity of a knowing and intelligent waiver.

(Footnote omitted.) Similarly, in *State v. Jones*, 99 Wn.2d 735, 664 P.2d 1216 (1983), a refusal of insanity defense case, the State of Washington's Supreme Court enunciated the same principle:

> A defendant exercising his right of self–representation, and thus by implication a defendant exercising his right to control his own defense, must "'knowingly and intelligently'" relinquish the benefits he forgoes and "should be made aware of the dangers and disadvantages" of his decision. *Faretta* [*v. California*, 422 U.S. 806, 45 L. Ed. 2d 562, 95 S. Ct. 2525 (1975)], at 835. Similarly, a court may not accept a guilty plea unless it is intelligent and voluntary. [*North Carolina v.*] *Alford* [400 U.S. 25, 27 L. Ed. 2d 162, 91 S. Ct. 160 (1970)], at 31; *Boykin v. Alabama*, 395 U.S. 238, 242, 23 L. Ed. 2d 274, 89 S. Ct. 1709 (1969). In addition, a defendant must be competent to make these intelligent and voluntary decisions.

*State v. Jones,* at 741. *See also State v. Dodd,* 70 Wn.2d 513, 424 P.2d 302, *cert. denied,* 387 U.S. 948 (1967).

Being psychotic does not necessarily mean a person is incompetent, delusions and hallucinations notwithstanding. And it does not necessarily mean that he cannot knowingly and intelligently waive a constitutional right. The key, once it has been established that the person is competent to stand trial, is whether he understands the particular constitutional right being waived, the legal consequences of it, and knowingly, voluntarily and intelligently makes the waiver.

In considering Hahn's motion to proceed pro se, the trial court heard Hahn and his appointed attorney and reviewed two reports signed by a clinical psychologist from Western State Hospital. These proceedings, combined with Hahn's appearance and his answers and comments to inquiries by the judge, supplied the judge with a sufficient basis to determine that Hahn was mentally competent to waive his right to counsel and was doing so knowingly, intelligently and voluntarily. I find nothing in the record indicating that the trial court abused its discretion in allowing Hahn to represent himself.

I note that the court very properly did appoint counsel who monitored the trial and was ready to assist Hahn should he have sought assistance. I also note that the evidence of Hahn's guilt at trial is overwhelmingly in support

of the verdict. The judgment should be affirmed.

Reconsideration denied November 6, 1985.

Review granted by Supreme Court January 10, 1986.