THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v HERBERTO ZAYAS, Appellant.

First Department, April 4, 1978

---

**APPEARANCES OF COUNSEL**

*Arthur Birnbaum* of counsel *(Demov, Morris, Levin & Shein,* attorneys), for appellant.

*Leonard G. Kamlet* of counsel *(Alan D. Marrus* with him on the brief; *Mario Merola, District Attorney),* for respondent.

## OPINION OF THE COURT

FEIN, J.

Appellant was convicted after a jury trial of sodomy in the first degree and aggravated harassment.

The human condition is such that no person can be guaranteed a perfect trial. However, the Constitution mandates that every defendant be given a fair trial. Defendant asserts that he was denied a fair trial because of counsel's failure to call as witnesses on his behalf three persons whose testimony would have placed him at a location far from the scene of the crime at the time it was allegedly committed. An analysis of the trial testimony is required to test this contention.

Defendant had paid a deposit of $1,000 on account of his contract to purchase a dry cleaning store at 88 Featherbed Lane, Bronx, in which complainant was employed. Sometime prior to 2 P.M. on November 11, 1974 defendant and his girl friend Nerys Tolentino came to the store and demanded his money back because the store was not making as much money as the owner had represented. The police, who came in response to a report of the dispute, recommended that the parties pursue the matter in civil court. Everybody left the store before 2 P.M. except for complainant.

On the trial complainant testified that later that day, between 2:30 and 3 P.M., defendant returned and forced her to go to the rear of the store, where he asked her to make love to him. When she refused he touched her sexual parts, tied her hands behind her back, tied her legs together with insulated wire and forced her to sodomize him orally. When the complainant tried to ring an alarm button with her elbow, defendant struck her over the back of the head with a weapon knocking her unconscious.

Raymond Ramirez, an employee, testified that sometime between 3:30 and 3:45 P.M. on the same day, when he arrived at the store, he found complainant half on the floor and half on a cot in the rear of the store apparently unconscious and tied. He called the police. The police testimony was that she was still in the same condition when they arrived. The police untied her and she was taken to the hospital by ambulance. No evidence of sperm was found at the scene. The police observed only a slight bruise on the front of her head but no bruises or lacerations on the rear of her head where she claimed she had been struck. The hospital doctor testified he found a laceration of the rear scalp.

Defendant admitted he was at the cleaning store somewhere around 1:30 and confirmed the incident respecting his dispute with the owner. He testified that (1) he left the store between 2 and 2:30 P.M. and went with his girl friend Nerys Tolentino to a police station in Union City, New Jersey, so that she could get a dancing license; (2) they arrived at the police station at about 3 P.M.; and (3) they left about 3:30 P.M. It is undiputed that Miss Tolentino was at the Union City, New Jersey police station sometime that day and obtained a license dated that day, which was received in evidence. Defendant further testified that (1) he and Miss Tolentino went to the Skyline Diner in West New York, New Jersey; (2) they arrived at about 3:15 P.M. or 3:35 P.M.; (3) they left at 4 P.M. and went to a club where they stayed for 15 minutes, had some drinks; and (4) they then went to the dry cleaning store in Teaneck, New Jersey, where defendant worked as a spotter. Faye Hernandez, a waitress at the Skyline Diner, testified that she served defendant and Miss Tolentino from about 3 P.M. to 4 P.M. on November 11, 1974. Miss Tolentino testified in substantial conformity with defendant's testimony.

There were no other witnesses for the defense. However, after the above witnesses had testified, the following colloquy occurred in the absence of the jury:

"[DEFENSE COUNSEL] Your Honor, I had indicated to the Court immediately prior to the luncheon recess that I expected to call two witnesses after lunch. One being the hospital for the production of the hospital record and the other one, the former employer of the defendant.

"As the Court is aware, I have had investigators out on this case at my request in attempting to prepare this matter. I have spoken to the attorney for the employer of the defendant who indicated after some persuasion that he would have his client available for me in Court. I notified him to be here today. I was informed that unfortunately that he is alone in the cleaning store at Teaneck, New Jersey, he cannot leave, cannot be present until March 1, whereupon I thanked him very much for his consideration and I would drop it.

"The two police officers whose presence I have also requested, indicated that they were New Jersey officers, this was a New York case, the subpoenas weren't valid and they did not desire to appear in Court, there was nothing I could do about that.

"THE COURT: Who said subpoenas issued in New York courts can't be enforced in new Jersey?

"[DEFENSE COUNSEL]: That was the understanding that I was given.

"THE COURT: You can get a court order from a competent Jersey court based upon a New York subpoena. There is nothing I can do about that.

"[DEFENSE COUNSEL]: Based on the procedures that—

"THE COURT: Had application been made, I believe, there is a remedy available.

"[DEFENSE COUNSEL]: I have never been aware of it in my years of practice but of course I realize the Court would have much better knowledge than I would.

"THE COURT: It is my belief that there is a remedy for that sort of situation but go ahead.

"[DEFENSE COUNSEL]: Be that as it may, the only evidence therefore that I have to proceed with and the defendant's final witness will be Dr. Greenidge and then the defendant will rest.

"THE COURT: All right, let's go.

"Bring the jury down and let us proceed.

(Whereupon, the jury was brought down after the luncheon recess.)

"COURT CLERK O'REILLY: Case on trial continued. People of the State of New York against Herberto Zayas.

"Let the record indicate the presence of the defendant, defendant's counsel, Assistant District Attorney and sworn jurors are present.

"THE COURT: [TO DEFENSE COUNSEL], in view of the question that you raised a little while ago, although it is academic, I direct your attention to Article 640 of the Criminal Procedure Law. [Counsel], you have an application on that exhibit H?"

The attorney made no further efforts to obtain the presence of the two New Jersey police officers and defendant's employer nor did he request an adjournment, although he stated that the substance of their testimony would tend to support defendant's contention that he had been in New Jersey during the time the alleged sodomy and assault occurred.

Since there was no question of identification in this case and the entire defense was premised upon the ground that the prosecution's case was a fabrication, the time element became

significant. The critical time was between 2:30 and 3:30. Obviously, if defendant was in New Jersey at that time he was not guilty. There were some discrepancies in the testimony of defendant and his witnesses as to the time element. Even though the testimony of the three New Jersey witnesses might have been merely cumulative or even equivocal, as indicated in the sentencing minutes, defendant was entitled to call them in the light of his defense. There were procedures available to obtain the presence of these three witnesses. An adjournment and the assistance of the court could have been sought to obtain their presence.

CPL article 640, "Uniform act to secure the attendance of witnesses from without the state in criminal cases," has been adopted in New Jersey as well as in New York. Upon appropriate application, a New York Judge is required to issue a certificate setting forth the need for the out-of-State witness. When such certificate is presented to a Judge of a court of record in the out-of-State county in which the witness is found that Judge may order that the witness be taken into custody and produced to testify. This procedure was not followed in this case.

Where the defense depends on establishing the presence of the defendant at a given location distant from the scene of the crime at the time the crime was committed, the significance of alibi testimony to that effect is such that a conviction obtained without an opportunity to produce the alibi witness cannot stand. *(People v Dalton,* 38 NY2d 222; see *People v Steeps,* 52 AD2d 887.)

Although the evidence was ample to sustain the conviction *(People v Gruttola,* 43 NY2d 116; see *People v O'Brien,* 48 AD2d 446), the failure to take the appropriate steps to obtain the out-of-State alibi witnesses deprived defendant of the fair trial to which he was entitled. *(People v Droz,* 39 NY2d 457.)* This cannot be gainsaid, even though defendant's counsel afforded him an otherwise able and vigorous defense and was commended for his efforts by the Trial Judge. It is noted that the jury was out for some time and twice reported itself deadlocked.

Accordingly, the judgment, Supreme Court, Bronx County, rendered April 26, 1976 (CHANANAU, J.), convicting defendant after trial of sodomy in the first degree and aggravated harassment and sentencing him to 0 to 7 years and one year to run concurrently should be reversed as a matter of discre-

tion in the interest of justice and a new trial granted. (CPL 470.15, subd 3, par [c]; subd 6, par [a].)

SILVERMAN, J. (concurring in result). I do not believe that the Trial Justice abused his discretion in any way. He even did some research for counsel, calling to counsel's attention the relevant statute. But, as I have a disquieting feeling that an innocent man may have been convicted here, I concur in the result.

MURPHY, P. J., EVANS and MARKEWICH, JJ., concur with FEIN, J.; SILVERMAN, J., concurs in the result in an opinion.

Judgment, Supreme Court, Bronx County, rendered on April 26, 1976, unanimously reversed as a matter of discretion in the interest of justice and a new trial granted. (CPL 470.15, subd 3, par [c]; subd 6, par [a].)