David BARNES, Petitioner-Appellant,

v.

Everett W. JONES, Superintendent Great Meadow Correctional Facility and the State of New York, Respondents-Appellees.

No. 135, Docket 81–2082.

United States Court of Appeals, Second Circuit.

Argued Sept. 15, 1981.

Decided Nov. 23, 1981.

428

Sheila Ginsberg Riesel, New York City (Alan Mansfield, New York City, and Phillips, Nizer, Benjamin, Krim & Bellou, New York City, of counsel), for petitioner-appellant.

Karen M. Wigle, Asst. Dist. Atty., Brooklyn, N. Y. (Eugene Gold, Dist. Atty., Kings County, Brooklyn, N. Y., of counsel), for respondents-appellees.

Before OAKES and MESKILL, Circuit Judges and BLUMENFELD,* District Judge.

OAKES, Circuit Judge:

This appeal involves the extent of an indigent criminal defendant's right to competent counsel on appeal from a New York State criminal conviction and the extent of his appellate counsel's duty to raise and argue particular issues at the defendant's request. The case arises out of the denial of a habeas petition by the United States District Court for the Eastern District of New York, Eugene H. Nickerson, Judge, in connection with appellant Barnes's conviction of robbery in the second degree and

* Of the District of Connecticut, sitting by desig-

assault in the second degree in the New York Supreme Court, Kings County, where he received a sentence of two concurrent terms of seven and one-half to fifteen years and three and one-half to seven years, respectively. Because we find that the defendant had successfully exhausted state remedies and we think that appellate counsel owed a duty to his client to pursue colorable claims on appeal in the state court, we reverse the judgment below.

## I. FACTS

### A. *The State Court Proceedings.*

1. *Trial.* David Barnes was charged with first and second degree robbery, second degree assault, and third degree larceny in connection with the robbery and stabbing of Richard Butts. The State's case relied primarily on the testimony of Butts who claimed that Barnes, whom he had known in the past as "Froggy," had been one of his four assailants. After testifying falsely about where he had been immediately preceding the robbery, the complainant Butts recollected that it was Barnes who had grabbed him from behind, though he conceded that Barnes was not the one who took his watch and that he did not know which of the four actually took his money. This identification, which was held to rest on the independent basis of Butts's previous familiarity with Barnes, was critical to the prosecution's case because the court found Butts's subsequent bedside identification of Barnes to have been "the worst possible way of having a showing made." On cross-examination defense counsel sought to impeach Butts's credibility by introducing a psychiatric medical report which suggested that Butts had a history of "blacking out." When counsel asked Butts whether he had ever undergone psychiatric treatment, however, the trial court *sua sponte* directed Butts not to answer. Trial counsel did not at that time provide the court with an offer of proof to establish the relevancy of the "blacking out" to Butts's ability to identify Barnes.

nation.

Barnes testified on his own behalf and presented the alibi that he was home with his father during the time Butts claimed the robbery occurred. Counsel did not, however, call Barnes's father as a witness, nor did he allude to Barnes's alibi testimony in summation. At the close of the evidence, defense counsel did request the court to charge the jury on accessorial liability—that a defendant cannot be held criminally liable for the acts of another unless he knew of the acts and intended the result—but the court declined to do so.

2. *The Appeal to the Appellate Division.* Barnes's application for leave to appeal in forma pauperis was granted by the Appellate Division, Second Department, on March 4, 1977, and new counsel, Michael Melinger, Esq., was appointed to prosecute Barnes's appeal. Barnes and his appellate counsel communicated in writing and on November 7, 1977, Barnes wrote to Mr. Melinger advising him of the arguments that he wanted made on appeal, including specifically that identification testimony should have been suppressed because it was a product of an unconstitutional pretrial show-up, that the Assistant District Attorney's cross-examination of Barnes exceeded permissible legal limits, that the trial court improperly excluded the psychiatric evidence, and that Barnes had been denied effective assistance of trial counsel. Barnes accompanied his letter with a supplementary brief.

In a letter dated November 9, Mr. Melinger replied that he would not argue that trial counsel ineffectively represented Barnes, explaining that "[n]ew facts, or new factual arguments, that existed and were readily determinable at trial, are not of assistance to us at this time," apparently under the mistaken belief that the ineffectiveness claim was not cognizable on appeal.[1] He also declined to argue that the

show-up was unconstitutional, but indicated that he would argue that the facts adduced at the *Wade* hearing relative to Butts's prior acquaintance did not substantiate the court's determination of an independent identification. Finally, counsel . identified six other claims worth raising on appeal including that the court improperly barred introduction of medical or psychiatric testimony concerning the complaining witness, that the prosecution's summation was improper, and that the court erred in examining Barnes and in denying the defense's requested charge. Counsel also agreed to submit Barnes's own supplementary pro se brief, while stating that he did not necessarily agree with the points made. He then sent Barnes a draft brief that raised only three of the seven points endorsed by his letter of November 9, 1977, and Barnes filed a subsequent second pro se brief. Mr. Melinger did not send Barnes a copy of the State's brief replying to his pro se briefs until after the oral argument. At oral argument Mr. Melinger argued the questions raised in his own brief, but asserted none of the arguments raised in the pro se briefs. By summary order without opinion the Appellate Division affirmed the conviction on both counts and leave to appeal to the Court of Appeals was denied on July 20, 1978.

3. *Subsequent State and Federal Proceedings.* Barnes then brought in the United States District Court for the Eastern District of New York a pro se petition for a writ of habeas corpus, which raised the four substantive issues originally presented in Barnes's first pro se brief to the Appellate Division. Barnes challenged the exclusion of the psychiatric report, the show-up procedure, and the allegedly improper examinations of Barnes by the prosecutor[2] and

---

1. With respect to matters dehors the record counsel had available the remedy of returning to the trial court in a coram nobis proceeding to supplement the record if necessary. *See, e. g., People v. Becvar,* 50 Misc.2d 249, 269 N.Y. S.2d 983 (Dist.Ct., Suffolk Co. 1966).

2. The prosecutor attempted to impeach Barnes on cross-examination by calling attention to a

prior burglary for which Barnes had never been convicted:

Q Were you ever convicted of burglary?
A No, I wasn't never convicted of burglary.
Q Were you convicted of the crime of burglary in 1970 and placed on probation for five years?
A A burglary in 1970?

the trial court.[3] He also claimed that trial counsel was ineffective, particularly in his failure to call Barnes's father as a witness to substantiate the alibi. The district court denied the writ after judging Barnes's ineffectiveness claim under the "farce and mockery" standard enunciated by the Court of Appeals for the Second Circuit in *United States v. Wight*, 176 F.2d 376 (2d Cir. 1949), *cert. denied*, 338 U.S. 950, 70 S.Ct. 478, 94 L.Ed. 586 (1950).[4]

Thereafter Barnes petitioned the New York State Court of Appeals for reconsideration of its denial of leave to appeal and also filed a motion under N.Y.Crim.Proc. Law § 440.20 challenging his sentence. Both applications were denied; leave to appeal those rulings was similarly denied. He then filed in the Eastern District the petition for a writ of habeas corpus underlying this appeal, in which he makes a constitutional challenge principally on the basis of the ineffective assistance of his state appellate counsel. The district court found that Barnes had exhausted his state remedies by alleging ineffective assistance of appellate counsel in his petition for reconsideration of the New York State Court of Appeals' denial of leave to appeal, but dismissed the petition for the writ in an opinion below. Although relying upon *United States v. Wight* as reenforced by *Rickenbacker v. Warden*, 550 F.2d 62 (2d Cir. 1976), *cert. denied*, 434 U.S. 826, 98 S.Ct. 103, 54 L.Ed.2d 85 (1977), the court found appellate counsel's performance adequate even under the more lenient "reasonable competence" standard adopted by other circuits and proposed by some of the judges in this circuit, *see* note 4 *supra*. As to Mr. Melinger's failure to argue all of the points petitioner wanted raised, Judge Nickerson stated that "it is not required that an attorney argue every conceivable issue on appeal, especially

---

Q No? I'm mistaken.

MR. SCHMULKER: May the jury be instructed that no inference can be drawn from it?

THE COURT: Are you finished with that?

MR. SILVERMAN: Yes, Judge.

THE COURT: The jury will not draw any inferences from the question asked.

3. During the cross-examination of Barnes by the Assistant District Attorney, Barnes stated that he had left his house at 3:00 P.M. to pick up a welfare check. The trial judge then interrupted:

THE COURT: You mean you're collecting welfare?

THE WITNESS: Yes.

THE COURT: While you were working off the books?

THE WITNESS: Yes.

THE COURT: Go ahead. Do you have any more questions, Mr. Silverman [the Assistant District Attorney]?

4. New York State does not follow the Second Circuit's standard for determining effectiveness of counsel, *see* text *infra* at 434–435. In 1976 it was observed that "particularly in view of this court's promotion of higher standards of advocacy, in the wake of Chief Judge Kaufman's well-chosen remarks [in Kaufman, *The Court Needs a Friend in Court*, 60 A.B.A.J. 175 (1974)], ... the time has come to follow the lead of the six other circuits (including the originating circuit) that have rejected the ['farce and mockery'] rule of *Diggs v. Welch*, 80 U.S.App.D.C. 5, 148 F.2d 667, *cert. denied*, 325 U.S. 889, 65 S.Ct. 1576, 89 L.Ed. 2002

(1945)." *Rickenbacker v. Warden*, 550 F.2d 62, 67 (2d Cir. 1976) (Oakes, J., dissenting), *cert. denied*, 434 U.S. 826, 98 S.Ct. 103, 54 L.Ed.2d 85 (1977). Three years later, Judge Mansfield similarly urged that "[i]n view of the fact that 9 circuits have adopted a different test along the lines of 'reasonable competence,' leaving only the Second and Tenth Circuits adhering to the old rule, ... this court should reevaluate the standard to be applied ...." *Indiviglio v. United States*, 612 F.2d 624, 632 (Mansfield, J., dissenting). Now that the Tenth Circuit has adopted a requirement that defense counsel act in a reasonably competent and skillful manner, *see Dyer v. Crisp*, 613 F.2d 275 (10th Cir. 1980), the Second Circuit is alone in requiring that defense counsel's inadequate performance be "of such a kind as to shock the conscience of the Court and make the proceedings a farce and mockery of justice." *Twitty v. Smith*, 614 F.2d 325, 333 (2d Cir. 1979) (quoting *United States v. Wight*, 176 F.2d 376, 379 (2d Cir. 1949), *cert. denied*, 338 U.S. 950, 70 S.Ct. 478, 94 L.Ed. 586 (1950)). This stringent standard has also been rejected as "demean[ing to] the Sixth Amendment's guarantee of meaningful counsel" by several commentators and recent state decisions, as Judge Weinstein noted in *Brinkley v. LeFevre*, 621 F.2d 45, 48 (2d Cir.) (Weinstein, J., dissenting), *cert. denied*, 449 U.S. 868, 101 S.Ct. 203, 66 L.Ed.2d 87 (1980). This decision is not based on the "reasonable competence" standard for evaluating attorney effectiveness, but rather is based on *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

when some may be without merit. Indeed, it is his professional duty to choose among potential issues, according to his judgment as to their merit and his tactical approach." This appeal ensued.

## II. DISCUSSION

### A. *Exhaustion of State-Court Remedies.*

■ The State, relying upon *Picard v. Connor*, 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971), argues that Barnes's claim that he was denied effective assistance of appellate counsel cannot serve as a basis for federal habeas relief because he was required by 28 U.S.C. § 2254(b), (c) (1976) to present this issue to the Appellate Division of the Supreme Court of New York. But on March 21, 1980 Barnes did request that the New York Court of Appeals reconsider its denial of leave to appeal the Appellate Division's affirmance of his conviction. At that time Barnes urged the Court of Appeals to consider whether he had been denied the effective assistance of counsel by appointed counsel's failure to raise and argue colorable issues at Barnes's request. A claim based on the ineffective assistance of counsel in prosecuting an appeal to the New York Appellate Division may be properly raised for the first time on direct appeal to the Court of Appeals. *People v. Gonzalez*, 47 N.Y.2d 606, 393 N.E.2d 987, 419 N.Y.S.2d 913 (1979) (remanding to the Appellate Division for de novo consideration of the appeal following *High v. Rhay*, 519 F.2d 109, 113 (9th Cir. 1975)).

■ The State points to section 670.5 of the Appellate Division Court Rules, which permits reargument of a cause or amendment of a decision for good cause shown at any time. *See also* N.Y.Crim.Proc. Law § 470.50. But *Picard v. Connor*, 404 U.S. at 275–77, 92 S.Ct. at 512–13, requires only that a claim raised in a federal petition have been previously presented in proper form to a state court. *See also United States ex rel. Ross v. LaVallee*, 448 F.2d 552, 553–54 (2d Cir. 1971) (citing *Brown v. Allen*, 344 U.S. 443, 448 n.3, 73 S.Ct. 397, 403 n.3, 97 L.Ed. 469 (1953)); *United States ex rel. Leeson v. Damon*, 496 F.2d 718, 721

(2d Cir.), *cert. denied*, 419 U.S. 954, 95 S.Ct. 215, 42 L.Ed.2d 172 (1974). The claim must have been properly presented to the state courts "at least once, on direct or collateral review." *Fielding v. LeFevre*, 548 F.2d 1102, 1106 (2d Cir. 1977). *See also United States ex rel. Irons v. Montanye*, 520 F.2d 646, 648–49 (2d Cir. 1975). That collateral relief may be available under N.Y.Crim. Proc. Law § 440.20 is therefore immaterial, *see United States ex rel. Cardaio v. Casscles*, 446 F.2d 632, 634 (2d Cir. 1971), and indeed the availability of any such collateral relief for Barnes's claim is in doubt, *see People ex rel. Douglas v. Vincent*, 50 N.Y.2d 901, 409 N.E.2d 990, 431 N.Y.S.2d 518 (1980) (Meyer, J., dissenting). The cases upon which the State relies, *United States ex rel. Gibbs v. Zelker*, 496 F.2d 991 (2d Cir. 1974); *United States ex rel. Johnson v. Vincent*, 507 F.2d 1309 (2d Cir. 1974), *cert. denied*, 420 U.S. 994, 95 S.Ct. 1435, 43 L.Ed.2d 678 (1975); and *Davis v. Henderson*, 468 F.Supp. 628 (S.D.N.Y.1979), are cases in which the habeas petitioner had not fairly presented his claims to *any* state court. Here Barnes properly presented his claim to the State's highest court and that is all that need be done.

### B. *Assistance of Counsel.*

■ Nearly one half century ago in *Powell v. Alabama*, 287 U.S. 45, 68–69, 53 S.Ct. 55, 64–65, 77 L.Ed. 158 (1932), the Supreme Court recognized for the first time that "[t]he right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel." In the years that followed the Court established that no indigent defendant may be imprisoned without first having been provided access to appointed counsel, *see Argersinger v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972); *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), and that this right applies not only at the trial stage but on appeal as well. *See Douglas v. California*, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963). Nor is the right to counsel satisfied by appointment of counsel alone; appointed

counsel must advocate his client's cause vigorously and competently. *Anders v. California*, 386 U.S. 738, 744, 87 S.Ct. 1396, 1400, 18 L.Ed.2d 493 (1967), emphasized that

> [t]he constitutional requirement of substantial equality and fair process can only be attained where counsel acts in the role of an active advocate in behalf of his client, as opposed to that of *amicus curiae* .... [Counsel's] role as advocate requires that he support his client's appeal to the best of his ability.

This obligation of counsel is stated with equal force in ABA Standards, Criminal Appeals § 3.2 (1970) and accompanying commentary. From this it follows that, as Judge Lumbard pointed out for the majority of the panel in *High v. Rhay*, 519 F.2d 109, 112 (9th Cir. 1975) (Lumbard, J., sitting by designation), where an appellant urges his counsel to make a non-frivolous argument, "[a]ppointed counsel ... has a duty under *Anders* not only to raise such a non-frivolous argument, but to advocate it conscientiously on appeal."

■ Appellate counsel need not argue frivolous appeals or raise frivolous issues on appeal, even if his client so requests. If, upon conscientious examination, counsel finds defendant's case to be wholly frivolous, he may so advise the court and request permission to withdraw; the brief to such effect has, of course, come to be known as an *Anders* brief. *See Anders v. California*, 386 U.S. at 744, 87 S.Ct. at 1400. *See also Ellis v. United States*, 356 U.S. 674, 675, 78 S.Ct. 974, 975, 2 L.Ed.2d 1060 (1958) (per curiam). Similarly, where defendant's appeal raises both frivolous and colorable (*i. e.*, nonfrivolous) issues, the case law permits counsel to argue only the colorable points and to omit the frivolous arguments that appellant would have him raise. *See, e. g., State ex rel. Henderson v. Boone Circuit Court*, 246 Ind. 207, 204 N.E.2d 346 (1965); *Bennett v. State*, 161 Me. 489, 214 A.2d 667 (1965). Alternatively, as indicated by the ABA Standards, *supra*, commentary d at 79, appellate counsel may include the frivolous question in his brief but deal with it sketchily, neither developing it in detail nor pressing it on the court. *See Johnson v. United States*, 360 F.2d 844, 847 (D.C.Cir.1966) (concurring opinion); *Wallace v. State*, 247 Ind. 405, 215 N.E.2d 354 (1966).

■ On the other hand, *Anders* compels appointed counsel to argue nonfrivolous appeals at defendant's request. In *Anders*, appointed counsel sought to withdraw from an appeal he believed to be of "no merit." The Court, finding that counsel's "no merit" statement was not equivalent to an evaluation that the appeal was frivolous, held that the *withdrawal was improper because an* appellant is entitled to counsel on a nonfrivolous appeal. By extension, *Anders* instructs that when, as here, appellant's appointed counsel intends to argue particular colorable points, but the appellant requests that he raise additional colorable points, counsel must argue the additional points to the full extent of his professional ability. *See High v. Rhay*, 519 F.2d at 112–13, followed in *People v. Gonzalez*, 47 N.Y.2d 606, 393 N.E.2d 987, 419 N.Y.S.2d 913 (1979).

■ Appointed counsel's judgment that appellant is unlikely to prevail on the merits of his nonfrivolous arguments is no substitute for an active advocate's presentation of those arguments to the appellate court, which is the appropriate forum for making a decision on the merits. The past half century of Supreme Court decisions confirms that the right to counsel is perhaps the most crucial right afforded criminal defendants. As Justice Schaefer of the Illinois Supreme Court once observed, "Of all the rights that an accused person has, the right to be represented by counsel is by far the most pervasive, for it affects his ability to assert any other rights he may have." Schaefer, *Federalism and State Criminal Procedure*, 70 Harv.L.Rev. 1, 8 (1957). Thus, appointed counsel's unwillingness to present particular arguments at appellant's request functions not only to abridge defendant's right to counsel on appeal, but also to limit the defendant's constitutional right of equal access to the appellate process in order to redress asserted errors at trial—the very right that an appointment of appellate counsel was designed to pre-

serve. *See Douglas v. California*, 372 U.S. at 357–58, 83 S.Ct. at 816–17. *See also Ross v. Moffitt*, 417 U.S. 600, 606–07, 94 S.Ct. 2437, 2441–42, 41 L.Ed.2d 341 (1974); *Griffin v. Illinois*, 351 U.S. 12, 19, 76 S.Ct. 585, 590, 100 L.Ed. 891 (1956).

Appellate counsel's error in failing to raise colorable issues at his client's insistence was in no way cured by submission of the defendant's pro se brief. A pro se brief is no substitute for the advocacy of experienced counsel. *High v. Rhay*, 519 F.2d at 113. The pro se briefs filed with the Appellate Division by petitioner here were no exception. They spoke only in generalities and cited a long line of cases without reference to the specific facts in this case relevant to such issues as trial counsel's competency.

Having demonstrated that appointed counsel failed to argue colorable claims at his request, an appellant need not also demonstrate a likelihood of success on the merits of those claims. *See High v. Rhay*, 519 F.2d at 113 ("the probabilities are that any review of the record, in light of all the arguments which diligent and experienced counsel may make for High, will still result in affirmance of the conviction"); *Robinson v. Wyrick*, 635 F.2d 757, 758 (8th Cir. 1981); *Horsley v. Simpson*, 400 F.2d 708, 712 (5th Cir. 1968). This follows from the determination in *Rodriquez v. United States*, 395 U.S. 327, 330, 89 S.Ct. 1715, 1717, 23 L.Ed.2d 340 (1969), that in order to establish a Sixth Amendment violation based on counsel's complete failure to file a notice of appeal, a defendant need not even specify the points that appellate counsel should have raised. *See also Entsminger v. Iowa*, 386 U.S. 748, 752, 87 S.Ct. 1402, 1404, 18 L.Ed.2d 501 (1967) (failure to file the entire record on appeal constitutes a violation of the Sixth Amendment).

[11] We turn then to whether the issues raised by Barnes in his pro se petitions and neither argued nor briefed by appellate counsel were indeed colorable or were merely frivolous. In making this determination we look not only to federal constitutional law but also to New York State criminal law.

Barnes's first and most significant claim is that his trial counsel was constitutionally inadequate. The adequacy of trial counsel's performance must be judged, in order to determine its colorability for purposes of argument on a New York appeal, in accordance with the New York standard, which is one of "reasonable competence," adopted by the courts of New York State prior to Barnes's appeal to the Appellate Division, *see generally People v. Aiken*, 45 N.Y.2d 394, 380 N.E.2d 272, 408 N.Y.S.2d 444 (1978), and which the State's courts continue to follow, *see, e. g., People v. Bell*, 48 N.Y.2d 933, 401 N.E.2d 180, 425 N.Y.S.2d 57 (1979) (as do the courts of appeals of all federal circuits other than our own, *see* note 4 *supra*). The district court's determination in the previous habeas proceeding that the assistance of Barnes's trial counsel did not amount to a "farce and mockery" is therefore not relevant to our determination of whether Barnes's claim of ineffective trial assistance was colorable, as the New York courts employ this different and less stringent standard.

Barnes alleges a number of instances of inadequate representation at trial. He asserts, at the outset, that his trial counsel never adequately prepared or investigated his case. Certainly failure to prepare makes the fundamental right to the assistance of counsel hollow. *See Avery v. Alabama*, 308 U.S. 444, 446, 60 S.Ct. 321, 322, 84 L.Ed. 377 (1940) (denial of opportunity for appointed counsel to confer, consult, or prepare converts appointment "into a sham"); *Morrow v. Parratt*, 574 F.2d 411 (8th Cir. 1978). The New York courts are in accord, *see People v. Gonzalez, supra; People v. Droz*, 39 N.Y.2d 457, 348 N.E.2d 880, 384 N.Y.S.2d 404 (1976); *People v. Bennett*, 29 N.Y.2d 462, 280 N.E.2d 637, 329 N.Y.S.2d 801 (1972); *People v. Gega*, 69 A.D.2d 772, 415 N.Y.S.2d 26 (1st Dep't 1979). Moreover, whether or not attributable to his lack of preparation, trial counsel's failure to call or subpoena Barnes's father to corroborate the alibi defense may in it-

self constitute error of constitutional dimensions, as the courts of New York have specifically held. *See, e. g., People v. Detling,* 73 A.D.2d 937, 423 N.Y.S.2d 509 (2d Dep't 1980) (failure to call the defendant's father as an alibi witness even though the father had corroborated the alibi before the grand jury deprived the defendant of effective assistance); *People v. Zayas,* 61 A.D.2d 594, 403 N.Y.S.2d 519 (1st Dep't 1978) (although the evidence was ample to sustain the conviction, counsel's failure to take appropriate steps to obtain out-of-state alibi witnesses deprived the defendant of a fair trial).

Beyond this, trial counsel erred in not presenting an offer of proof of the relevance of psychiatric evidence indicating the complainant's history of "blacking out." His omission left unchallengeable the trial court's ruling that such evidence was improper, despite the fact that evidence relevant to a complainant's mental condition may be admissible on the issue of credibility, *see e. g., People v. Rensing,* 14 N.Y.2d 210, 199 N.E.2d 489, 250 N.Y.S.2d 401 (1964). Similarly, trial counsel's failure to lodge an objection during the prosecutor's summation allowed the prosecutor's inflammatory remarks [5] to go to the jury unchallenged and foreclosed review for all practical purposes. *See* N.Y.Crim.Proc.Law § 470.05(2). *See also Commonwealth v. Valle,* 240 Pa.Super.Ct. 411, 362 A.2d 1021 (1976) (finding ineffectiveness based on trial counsel's failure to object to the prosecutor's argument to the jury calling defendant "vicious" and a "liar"); ABA Standards for Criminal Justice, The Prosecution Function § 5.8(b), (c), and (d).

The State trial court's refusal to charge accessorial liability raised a second colorable claim for appellate review. The trial court declined to instruct the jury that it could find Barnes guilty of the robbery counts only if it found that he possessed the requisite intent and knowledge. A defendant is entitled to an instruction if it is supported by the evidence and sets out a correct declaration of applicable legal standards. *United States v. Manning,* 618 F.2d 45, 47–48 (8th Cir. 1980); *People v. Wrench,* 34 A.D.2d 1055, 312 N.Y.S.2d 561 (3d Dep't 1970). The robbery statute under which Barnes was convicted requires "forcible stealing," N.Y. Penal Law § 160.00. Because there was no proof that Barnes personally stole the complainant's property, the guilty verdict could only have been predicated on a theory of accessorial liability, which requires mental culpability under N.Y. Penal Law § 20.00. It could well be argued that the failure so to charge the jury unduly prejudiced Barnes's bona fide defense that the act of stealing concededly committed by others could not be attributed to him.

Thus at least two issues were colorable and should have been argued by counsel to the Appellate Division, and counsel on appeal, in failing to do so, must be held to have rendered ineffective assistance.

Nothing that we say here detracts from the proposition—unchallenged by Barnes—that appellate counsel has the authority to make decisions regarding strategies and tactics attendant to his representation, an authority flowing from recognition of counsel's professional training, experience, and well-informed judgment. *See Ennis v. LeFevre,* 560 F.2d 1072, 1075 (2d Cir. 1977), *cert. denied,* 435 U.S. 976, 98 S.Ct. 1625, 56 L.Ed.2d 70 (1978). But the decision to forego potentially meritorious issues on appeal requires as much client input as does the decision whether to appeal in the first instance, *see Ennis,* 560 F.2d at 1077 (Gurfein, J., concurring) (whether to raise an issue, "if a serious [one], may per-

---

**5.** "But suddenly, today, Mr. Barnes gets up and tries to create some kind of lie.... [Y]ou evaluate him. Does he have an interest in the outcome? Is he more apt to lie than Butts? You better believe it, you better believe it, you better believe it.... [I]t's obvious to you, without raising my voice, that on March 16th

he [w]as a thief, he was a cheat, he was stealing. I think you all know that you can't work and collect welfare benefits. That's against the law. You think he was any less of a thief on March 15th than he was on March 16th? He made himself out to be what he is, a thief, liar and a cheat."

haps not be left entirely to the lawyer's decision"). As Code of Professional Responsibility EC7–7 recognizes:

> In certain areas of legal representation not affecting the merits of the cause or substantially prejudicing the rights of a client, a lawyer is entitled to make decisions on his own. But otherwise the authority to make decisions is exclusively that of the client and, if made within the framework of the law, such decisions are binding on his lawyer. As typical examples in civil cases, it is for the client to decide whether he will accept a settlement offer or whether he will waive his right to plead an affirmative defense. A defense lawyer in a criminal case has the duty to advise his client fully on whether a particular plea to a charge appears to be desirable and as to the prospects of success on appeal, but it is for the client to decide what plea should be entered and whether an appeal should be taken.

In the final analysis, as stated in the Code, EC7–8, "the lawyer should always remember that the decision whether to forego legally available objectives or methods because of non-legal factors is ultimately for the client and not for himself." *See also* Model Rules of Professional Conduct rule 1.3 (Discussion Draft, Chicago: American Bar Association, Jan. 30, 1980) ("A lawyer shall accept a client's decisions concerning the objectives of the representation and the means by which they are to be pursued except" where his client's instructions violate the law or the rules of professional conduct or where before or during representation he obtains the client's consent to the limitation), *cited in* Spiegel, *The New Model Rules of Professional Conduct: Lawyer-Client Decision Making and the Role of Rules in Structuring the Lawyer-Client Dialogue*, 1980 Am. Bar Foundation Research J. 1003, 1005. The functions and duties of assigned defense counsel do not differ from those of retained counsel. *See* ABA Standards for Criminal Justice, The Defense Function 1.1(e).

Here, as in *High v. Rhay*, the decision below is reversed and the case is remanded to the district court, which is directed to grant the writ of habeas corpus unless within a reasonable time, not to exceed ninety days, the State assigns new counsel and grants Barnes leave to appeal from his 1978 conviction.

Judgment in accordance with opinion.

MESKILL, Circuit Judge (dissenting):

The majority relies principally on *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), to find that petitioner David Barnes was deprived of the effective assistance of counsel on his state appeal. Because I do not agree that *Anders* supports this result, I dissent.[1]

In *Anders*, the petitioner sought to appeal his conviction for possession of marijuana with the aid of court-appointed counsel. After studying the trial record, appointed counsel informed the appellate court by letter that he believed the appeal to be meritless but that the petitioner nevertheless wished to file a *pro se* brief. The court refused the petitioner's request for appointment of new counsel, considered the appeal on the basis of the petitioner's *pro se* brief and the state's answering brief and unanimously affirmed the conviction. Anders then filed an application for a writ of habeas corpus in the state District Court of Appeal, alleging that he had been denied his right to counsel on appeal. That court denied his application. The California Supreme Court then denied a similar application.

The United States Supreme Court granted *certiorari* and reversed the decision of the California Supreme Court. The Court condemned the representation provided by Anders' appellate counsel, stating that he had acted as *amicus curiae* rather than advocate and ruling that such representation

---

1. On the issue of the exhaustion of state remedies, I agree with the majority's holding that "[h]ere Barnes properly presented his claim to the State's highest court and that is all that need be done." Maj. Op. at 432. My dissent is limited to the resolution of the issue of effective assistance of appellate counsel.

had deprived the defendant "that full consideration and resolution" of his appeal compelled by "[t]he constitutional requirement of substantial equality and fair process . . . ." 386 U.S. at 742–44, 87 S.Ct. at 1399–1400.

I agree with the majority that even after *Anders*, an attorney who finds his client's appeal wholly frivolous may so advise the court and request permission to withdraw. Maj. Op. at 433. Similarly, I agree that where a client seeks to raise both frivolous and nonfrivolous issues on appeal, the attorney may properly assert only the colorable claims. *Id.* Nevertheless, the majority finds that *Anders,* which merely holds that appointed counsel must argue nonfrivolous *appeals,* requires "by extension" that appellate counsel raise all *issues* suggested by his client that an appellate court, with the clarifying aid of hindsight, decides are "colorable." I cannot accept this extension of *Anders.*

Like other federal cases finding constitutional violations in state appellate proceedings, *Anders* is based on principles of equality. Although the right to appeal a criminal conviction is not guaranteed by the United States Constitution, the Constitution does require that when a state provides appellate review, it must "assure the indigent defendant an adequate opportunity to present his claims fairly in the context of the State's appellate process." *Ross v. Moffitt,* 417 U.S. 600, 616, 94 S.Ct. 2437, 2446, 41 L.Ed.2d 341 (1974). *See Douglas v. California,* 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963); *Griffin v. Illinois,* 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956). The instant case is unlike *Anders,* where appellate counsel's complete refusal to brief and argue claims left the defendant totally without the aid of counsel in pressing his appeal. Here petitioner Barnes complains that his lawyer argued some issues before the appellate court, but declined to argue every nonfrivolous claim that Barnes had requested him to present.

The *Anders* standard for judging the effectiveness of appellate counsel requires "that [appointed counsel] support his

client's appeal to the best of his ability." 386 U.S. at 744, 87 S.Ct. at 1400. This Court has recognized that "decisions concerning which legal issues will be urged on appeal are uniquely within the lawyer's skill and competence, and their resolution is ultimately left to his judgment." *Ennis v. LeFevre,* 560 F.2d 1072, 1075 (2d Cir. 1977), *cert. denied,* 435 U.S. 976, 98 S.Ct. 1625, 56 L.Ed.2d 70 (1978). A decision not to raise some colorable claim on appeal may be an intelligent and effective tactical choice. Thus, concurring in *Ennis,* Judge Newman commented as follows on appellate counsel's decision not to press a claim urged by the defendant that improper identification evidence was used against him:

> By no stretch of the imagination was petitioner's appellate counsel ineffective in the Sixth Amendment sense. On the contrary, he was most effective. From the possible issues to be raised on appeal, he focused on an important one with the likelihood of success and did not risk obscuring its worth in a welter of trivia. . . . I am entirely satisfied that while a nonfrivolous challenge could have been made, petitioner's appellate counsel cannot be faulted for considering the probability of success too slight to merit inclusion in the initial appeal.

560 F.2d at 1077–78 (Newman, *J.,* concurring). I agree with Judge Newman that in exercising the professional skill and judgment for which he is retained, an appellate lawyer might well decide to forgo presentation of some issues urged by his client precisely to "support his client's appeal to the best of his ability[,]" *Anders,* 386 U.S. at 744, 87 S.Ct. at 1400. The *per se* rule adopted by the majority is unjustified. Rather, once it is shown that appellate counsel filed a brief which presents claims in a lawyer-like manner, the adequacy of that brief should be judged by the normal standard for effective assistance of counsel.

*High v. Rhay,* 519 F.2d 109 (9th Cir. 1975), relied upon heavily by the majority, is consistent with this approach. While the appellate lawyer in *High* did file a brief, the court's opinion makes clear that the brief

was so inadequate that the defendant was effectively denied legal representation altogether:

On January 17, 1972, Munro [(appellate counsel)] filed a four-page "Brief of Appellant," . . . . In this brief counsel did not make even a minimal statement of the facts which were relevant to the appeal. The single "Assignment of Error" was that the trial court erred in finding the defendant guilty. In a three-sentence, eighty-five-word section entitled "Argument of Counsel," the court was simply invited to review the transcript to determine whether the evidence established that High was guilty beyond a reasonable doubt.

. . . .

. . . The "brief" is worthless. It could not have required more than five minutes to draft. No client in his right mind would pay one cent for such a performance. It is difficult to understand how the Washington Court of Appeals could accept such a brief and thereafter deny High's motion to relieve Munro and to designate new counsel.

*Id.* at 111–13. *High* differs drastically from the case before us. The record in this case indicates that appellate counsel, Michael Melinger, studied the trial record, considered several potential grounds for appeal, communicated his opinions to his client requesting thoughts and suggestions, and filed a skillfully drafted brief which set forth the factual and legal bases of the claims that, in his professional judgment, he considered viable. Unlike *High*, there is no indication in this record that Barnes' counsel was merely going through the motions of complying with the letter of *Anders.*

Even were I to accept the view that the determination of which legal issues to raise on appeal may not always be left entirely to counsel, *see Ennis v. LeFevre*, 560 F.2d at 1076–77 (Gurfein, *J.*, concurring), I would not agree with the majority's result in this case. The record does not support the con-

clusion that Barnes did more than suggest certain claims to his lawyer and accept his lawyer's judgment that these claims were not useful. The majority identifies two issues—ineffective assistance of trial counsel and failure of the trial court to give a charge on accessorial liability—as nonfrivolous issues that Melinger refused to raise despite his client's instructions. The only record support cited by Barnes to demonstrate that he insisted that these issues be raised is a letter to him from Melinger on November 9, 1977, which incorporates by reference a letter he sent to Melinger two days earlier. In his letter Melinger stated:

I am currently in the process of framing the points of law in your case that I believe are appealable. . . . Please respond with your reflections and suggestions in reference to them. Once I hear from you, I will prepare the brief.

Later in the letter Melinger discussed issues suggested by Barnes and explained that "[n]ew facts, or new factual arguments . . . are not of assistance to us at this time." One of the "new factual arguments" listed by Melinger that was "not of assistance" was the claim of ineffectiveness of trial counsel. Melinger then listed seven issues which he thought had potential merit, including the trial court's failure to give the charge on accessorial liability requested by the defendant.[2]

It is important to note that the failure of the trial court to charge on accessorial liability appears only in the list of issues suggested by Melinger. There is no indication in the record that Barnes ever suggested, let alone insisted, that Melinger raise this claim. In addition, the record contains no indication that Barnes insisted that Melinger raise an ineffective assistance of counsel claim. The record is devoid of evidence of correspondence between Melinger and Barnes from the time Melinger wrote to Barnes in early November 1977 to the time Melinger filed his brief in late February 1978. Thus, there is no indication that

2. Melinger sent a second letter to Barnes after the oral argument of Barnes' appeal before the Appellate Division. Melinger informed Barnes

that he limited his presentation to the points raised in his own brief.

Barnes ever responded to Melinger's request for "reflections and suggestions" on the matters discussed in Melinger's letter. Barnes never moved to replace Melinger, as might be expected if a conflict existed. In fact, he sought no relief other than permission to file *pro se* briefs, at least one of which was prepared even before Melinger began to compose his brief. From this record, the inference that Barnes pressed Melinger to raise the "nonfrivolous" claims identified by the majority is unreasonable.

As a final point, perhaps obvious from the foregoing, I do not believe that Melinger's representation fell below the level of "reasonable competence" required of defense counsel in other circuits, let alone the more stringent "farce and mockery" standard employed by this Court. *See* Maj. Op. at 431 n.4. It is clear from the brief filed by Melinger that he reviewed the entire trial record, identified potentially meritorious issues, and forcefully presented claims of error through citation to pertinent portions of the record and to applicable precedent. While with the benefit of hindsight we may be able to find enough merit in claims rejected by Melinger to label them "nonfrivolous," it does not follow that Melinger's decision not to raise them rendered his performance constitutionally inadequate. Neither has Barnes demonstrated that Melinger's failure to raise the claims identified by the majority "resulted from neglect or ignorance rather than from informed, professional deliberation." *Marzullo v. Maryland,* 561 F.2d 540, 544 (4th Cir. 1977), *cert. denied,* 435 U.S. 1011, 98 S.Ct. 1885, 56 L.Ed.2d 394 (1978). Certainly it cannot be said that Melinger's advocacy turned the appellate proceeding into a "farce and mockery of justice[,]" *United States v. Wight,* 176 F.2d 376, 379 (2d Cir. 1949), *cert. denied,* 338 U.S. 950, 70 S.Ct. 478, 94 L.Ed. 586 (1950).

I would affirm Judge Nickerson's decision.