**Richard CUNNINGHAM, Petitioner-Appellee,**

v.

**Robert HENDERSON, Superintendent, Auburn Correctional Facility, Respondent-Appellant.**

**No. 278, Docket 83–2179.**

United States Court of Appeals, Second Circuit.

Argued Oct. 26, 1983.

Decided Jan. 5, 1984.

Robert G. Del Grosso, Garden City, N.Y., for petitioner-appellee.

Nikki Kowalski, Asst. Dist. Atty., Brooklyn, N.Y. (Elizabeth Holtzman, Dist. Atty., Kings County, Barbara D. Underwood, Asst. Dist. Atty., Brooklyn, N.Y., on the brief), for respondent-appellant.

Before LUMBARD, OAKES and KEARSE, Circuit Judges.

KEARSE, Circuit Judge:

Respondent Robert Henderson, superintendent of a correctional facility of New York State at which petitioner Richard Cunningham is incarcerated as a result of a 1978 state conviction, appeals from a judgment of the United States District Court for the Eastern District of New York, Jack B. Weinstein, *Chief Judge,* granting Cun-

ningham's petition for a writ of habeas corpus on the ground that Cunningham was denied effective assistance of appellate counsel. The district court's judgment ordered that the State either provide Cunningham with appellate counsel within 90 days and allow him to challenge the 1978 sentence in the Appellate Division of the New York Supreme Court, or release Cunningham from custody. Henderson (hereinafter the "State") appeals, contending that Cunningham's claim of ineffective assistance of counsel cannot be sustained in light of *Jones v. Barnes,* —— U.S. ——, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983), *rev'g* 665 F.2d 427 (2d Cir.1981), decided by the Supreme Court after Chief Judge Weinstein's decision below. We agree and reverse.

## BACKGROUND

### A. *Cunningham's Conviction and Sentence*

In 1978, Cunningham was convicted in New York Supreme Court of grand larceny in the third degree under N.Y. Penal Law § 155.30 (McKinney 1975), which includes the taking of property of any value from the person of another, and of criminal possession of stolen property in the third degree under N.Y. Penal Law § 165.40 (McKinney 1975). The events on which Cunningham's conviction was predicated are largely undisputed.

On July 17, 1977, a New York City Transit Police Officer posed as an unconscious, nauseated inebriate on a stairway leading to a subway station platform in Brooklyn, New York; on the shoulder of the decoy was a bag within which was a billfold containing one dollar and several pieces of "play" money. The billfold and its contents were positioned so as to be visible to passersby. Another Transit Officer was stationed in a pump room in the station, from which he could covertly observe the decoy. At approximately 12:55 P.M., Cunningham descended the stairs, stopped next to the decoy, and removed the billfold from the shoulder bag. He was immediately arrested. Upon being taken into custody, Cunningham said: "Oh damn. Give me a break." The officer said, "Wait a minute.

Let me read your *Miranda* warnings." Cunningham then said, "I can't stand this bust. Please give me a break." When the officer asked why Cunningham had taken the wallet, Cunningham said: "I took it because I wanted to. I wanted it, and it was there."

The jury found Cunningham guilty of grand larceny in the third degree, which is a Class E felony ordinarily punishable by a maximum sentence of four years in prison, *see* N.Y. Penal Law § 155.30 (McKinney 1975); *id.* § 70.00–2(e) (McKinney 1975), and of criminal possession of stolen property in the third degree, which is a Class A misdemeanor punishable by a maximum of one year's imprisonment, *see* N.Y. Penal Law § 165.40 (McKinney 1975); *id.* § 70.-15–1 (McKinney 1975). The prosecution, however, moved to have Cunningham sentenced more severely under New York's Persistent Felony Offender statute, N.Y. Penal Law § 70.10 (McKinney 1975 & Supp. 1982).

The Persistent Felony Offender statute provides that "[a] persistent felony offender is a person, other than a persistent violent felony offender as defined in section 70.08, who stands convicted of a felony after having previously been convicted of two or more felonies . . . ." The section authorizes the court to sentence such an offender as if the present conviction were a Class A–1 felony (carrying a minimum sentence of fifteen years' imprisonment and a maximum sentence of life imprisonment under N.Y. Penal Law § 70.00 (McKinney 1975)), if the court is "of the opinion that the history and character of the defendant and the nature and circumstances of his criminal conduct indicate that extended incarceration and life-time supervision will best serve the public interest." The statute directs the sentencing court to state its reasons for such a disposition on the record.

Justice Edward S. Lentol, who had presided over Cunningham's trial, held a sentencing hearing at which he found that Cunningham's prior record included convictions for three felonies: attempted grand larceny in the second degree, for which

Cunningham had been sentenced in 1967 to 1–2 years in prison; grand larceny in the third degree for which he had been sentenced in 1969 to up to four years in prison; and for robbery in the second degree and grand larceny in the third degree, for which he had been sentenced in 1973 to seven years in prison. The court found that from 1963 to 1977 Cunningham had also been convicted of six misdemeanors of various types. At the time of his arrest for the instant offense, Cunningham was on parole. The Probation Department's presentence report stated that "[w]hile [Cunningham's] institutional adjustment has been satisfactory, he apparently cannot function within society without resorting to larcenous behavior." At the hearing, Cunningham's counsel stated that Cunningham did not wish to controvert the record or the presentence report. Rather Cunningham and two character witnesses called by him testified that Cunningham's character was not inherently criminal.

After the hearing, Justice Lentol granted the prosecution's motion to classify Cunningham as a persistent felony offender. Noting that the maximum possible sentence was 25 years to life imprisonment, the court sentenced Cunningham to 15 years to life imprisonment.

B. *Cunningham's Appeal to the Appellate Division*

Cunningham's new assigned counsel on appeal was Herbert Kramer. Cunningham wrote a series of letters to his counsel during the spring of 1979, asking to be advised of the status of the appeal and to be consulted before the preparation of the brief. By letter dated April 25, 1979, Cunningham described the issues he thought should be argued, including the excessiveness of his sentence. Pointing out that his theft was of just one dollar, Cunningham described the sentence as a violation of the Eighth Amendment to the Constitution and as "a denial of human dignity."

On October 2, 1979, Kramer sent Cunningham a copy of the brief Kramer had prepared ("Kramer Brief"), which argued

three points: (1) that guilt of grand larceny had not been proved beyond a reasonable doubt, because it was not adequately established that the taking was from the decoy's "person"; (2) that the lesser-included offense of petty larceny should have been submitted to the jury; and (3) that the two crimes of which Cunningham was convicted are inconsistent. He wrote to Cunningham as follows:

> I am in receipt of your recent letters. I am in agreement with some of your points raised and have included them in my brief which I am sending under separate cover.
>
> After reviewing same if you have any additional points to raise to the court, you are at liberty to file a supplemental brief.
>
> If you have any questions, please feel free to contact me.

(October 2, 1979 letter Kramer to Cunningham.) When Cunningham inquired as to why several issues, including the excessive sentence point, were not included in the brief, Kramer responded as follows:

> The issues that you request, I consider less viable than the ones raised in the brief.... The sentence is controlled by the persistant [*sic*] felony law and although I examined the question, again I did not find an appealable issue.

(October 23, 1979 letter Kramer to Cunningham ("October 23 letter").) Cunningham filed a supplemental brief *pro se,* in which he attacked the length of his sentence. The State filed a supplemental brief in opposition, appending to it Cunningham's prior criminal record.

The appeal was submitted without oral argument. The Appellate Division affirmed Cunningham's conviction in a memorandum opinion that discussed the Kramer Brief's first two contentions and stated that the court had "considered the other contentions raised by defendant and ha[d] found them to be without merit." *People v. Cunningham,* 73 A.D.2d 976, 424 N.Y.S.2d 240, 241 (1980). The New York Court of Appeals denied Cunningham's *pro se* motion for leave to appeal.

In 1982, Cunningham, represented by Prisoners' Legal Services of New York, moved in the Appellate Division for reargument and reconsideration of the 1980 affirmance of his conviction and his adjudication as a persistent felony offender. The affidavit of Cunningham's new counsel argued, *inter alia,* that Kramer's failure to brief the colorable issues requested by Cunningham constituted a violation of Cunningham's Sixth Amendment right to effective assistance of counsel. The Appellate Division denied the motion.

## C. *The Federal Habeas Corpus Proceedings*

In 1983, Cunningham filed a *pro se* petition for habeas corpus in the district court, asserting, *inter alia,* that he had been denied effective assistance of counsel because of Kramer's refusal to follow Cunningham's instructions to raise several colorable issues on the direct appeal. The court appointed new counsel to pursue these claims.

As to the claim of ineffective assistance of counsel, Cunningham's new counsel discussed only Kramer's failure to attack the sentence. Argument before the district court emphasized that our then-unreversed decision in *Barnes v. Jones, supra,* 665 F.2d 427, held that the failure of appointed counsel to raise on appeal any colorable claim requested by the defendant constituted a violation of the defendant's Sixth Amendment right to counsel. *Id.* at 432–36. The district court considered the excessiveness of sentence argument to be even better than colorable, expressing the view that it was worthy of being the centerpiece of counsel's appellate presentation. By order dated April 28, 1983, the court granted the habeas petition on this ground, ordering that the State either appoint counsel for Cunningham within 90 days and allow a new appeal challenging the excessiveness of his sentence, or release him from custody.

This appeal followed. The district court stayed its judgment pending appeal.

## DISCUSSION

Although the decision of the district court was correct under the then-prevailing standard set by this Court in *Barnes v. Jones, supra,* the Supreme Court thereafter reversed *Barnes* and set a different standard for determining whether or not there has been ineffective assistance of appellate counsel. Under the Supreme Court's standard, we cannot conclude that Kramer's refusal to argue the excessiveness of the sentence violated Cunningham's Sixth Amendment rights.

### A. *The Standard*

In *Barnes v. Jones,* this Court had held that a defendant who is assigned counsel to represent him in criminal proceedings has a constitutional right to require counsel to raise on appeal every nonfrivolous issue requested by the defendant. 665 F.2d at 433–34. The Supreme Court disagreed. While noting that *Anders v. California,* 386 U.S. 738, 744, 87 S.Ct. 1396, 1400, 18 L.Ed.2d 493 (1967), "recognized that the role of the advocate 'requires that he support his client's appeal to the best of his ability,' " *Jones v. Barnes,* 103 S.Ct. at 3313–14, the *Jones* Court stated that this obligation does not confer "a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." *Id.* at 3312. Emphasizing the importance of having the appellate advocate select what, in his professional judgment, are the most promising issues for review, *id.* at 3313, the Court ruled that appointed counsel has no obligation "to raise every 'colorable' claim suggested by a client," *id.* at 3314. The Court concluded that judges should not "second-guess reasonable professional judgments." *Id.*

■ Our proper inquiry in the present case, therefore, is whether Kramer's decision not to challenge Cunningham's sentence as excessive was a "reasonable professional judgment[ ]." We conclude that it was.

### B. *The Reasonableness of Counsel's Refusal*

■ Cunningham's repeated requests that counsel challenge the sentence as ex-

cessive suggested two prongs of attack: (1) that his theft of one dollar was a minor offense for which a sentence of 15 years to life imprisonment was cruel and unusual punishment in violation of the Eighth Amendment; and (2) that his sentence should be reviewed by the Appellate Division in the exercise of its discretion and reduced in the interests of justice. Without purporting to decide the merits of either claim, we find both grounds sufficiently problematical that the refusal to raise them cannot be assailed as an unreasonable professional judgment.

### 1. The Constitutional Ground

When Cunningham's appeal was briefed and decided in late 1979 and early 1980, the constitutionality of statutory systems providing long-term confinement for recidivists was established unquestionably. *Spencer v. Texas,* 385 U.S. 554, 560, 87 S.Ct. 648, 651, 17 L.Ed.2d 606 (1967). Our own cases had repeatedly upheld heavy sentences for narcotics violations. *See Carmona v. Ward,* 576 F.2d 405 (2d Cir.1978), *cert. denied,* 439 U.S. 1091, 99 S.Ct. 874, 59 L.Ed.2d 58 (1979); *United States v. Fiore,* 467 F.2d 86 (2d Cir.1972), *cert. denied,* 410 U.S. 984, 93 S.Ct. 1510, 36 L.Ed.2d 181 (1973). The *Carmona* panel pointed out that the Supreme Court at that time had never overturned a prison sentence solely because of its length, 576 F.2d at 408, and emphasized the deference owed to state legislatures in defining the severity of criminal punishments, *see id.* at 410 ("The paramount role of determining that the punishment fit the crime is that of the legislature of the state."). These principles were reaffirmed in *Bellavia v. Fogg,* 613 F.2d 369, 373 (2d Cir.1979). A lawyer confronting these precedents had good reason to consider other issues more viable

than the proposed Eighth Amendment argument.

### 2. The Discretionary Ground

The proposition that the Appellate Division might have reviewed and modified Cunningham's sentence in the exercise of its discretion in the interests of justice was perhaps more promising, but again we conclude that its rejection was not an unreasonable decision.

Section 470.15–2(c) of the N.Y.Crim. Pro.Law allows the Appellate Division, "[u]pon a determination that sentence imposed upon a valid conviction is illegal or unduly harsh or severe, [to] modify the judgment by reversing it with respect to the sentence and by otherwise affirming it." Such a reversal or modification of a sentence may be based on the Appellate Division's exercise of its own "discretion in the interests of justice." § 470.15–3(c). Prior to Cunningham's appeal, the Appellate Division had frequently observed, in determining whether to exercise its own discretion, that sentencing is a matter resting in the sound discretion of the trial court and that the appellate court should not reduce the sentence unless the trial court's discretion has been abused. *See, e.g., People v. Du Bray,* 76 A.D.2d 976, 977, 429 N.Y.S.2d 76, 77 (3d Dep't 1980); *People v. Hochberg,* 62 A.D.2d 239, 251, 404 N.Y.S.2d 161, 170 (3d Dep't 1978); *People v. Halvorsen,* 60 A.D.2d 927, 401 N.Y.S.2d 16, 17 (3d Dep't 1978).[1] And while the appellate court had on occasion found "an improvident exercise of discretion" sufficient to warrant a reduction of a sentence, *see People v. Snyder,* 40 A.D.2d 754, 337 N.Y.S.2d 796 (4th Dep't 1972), we have been unable to discover any case in which the Appellate Division had, prior to Cunningham's appeal, exercised its discretion to reduce a sentence

---

1. More recently, the Appellate Division has stated the test in a way that is less deferential to the trial court's discretion. *See People v. Suitte,* 90 A.D.2d 80, 85–86, 455 N.Y.S.2d 675, 679 (2d Dep't 1982) ("abuse of discretion is the test most frequently cited .... Nevertheless, since the Legislature has empowered us to modify sentences 'as a matter of discretion in the interests of justice' (CPL 470.15, subd. 3) and our general review powers include the right to do whatever the trial court could have done even in matters entrusted to the discretion of that court, we can substitute our own discretion for that of a trial court which has not abused its discretion in the imposition of a sentence.")

imposed under the persistent felony offender statute.[2]

In assessing the weight of the various arguments that could be made on appeal, Kramer was faced with a picture in which Cunningham had been convicted of felonies three times previously, one time more than the minimum necessary to qualify him for persistent felony offender status; these convictions had resulted in increasingly long prison terms for him commencing in 1967, 1969, and 1973; and, undeterred, Cunningham while on parole from the last of these had decided to steal the decoy's wallet simply because he wanted it and it was there. The sentencing court had before it these facts and the Probation Department's view that Cunningham apparently could not function outside a penal institution without resorting to larcenous behavior. Given the facts, together with the sentencing discretion possessed by the trial court and the difficulty of finding any case in which the Appellate Division had exercised its own discretion to reduce a sentence under the persistent felony offender statute, we cannot conclude that Kramer's decision not to pursue the excessiveness of sentence contention was an unreasonable professional judgment. Kramer considered the issue and his judgment was that the sentencing issue was "less viable" than the issues he chose to brief. (October 23 letter.) Whether or not his assessment was correct, in the circumstances it is the type of judgment that, under *Jones v. Barnes,* we may not second-guess.

## CONCLUSION

The judgment of the district court is reversed and the cause is remanded for entry of judgment dismissing the petition. No costs.

2. Indeed, we have found only one later case in which the appellate court ruled that it was an improvident exercise of discretion to sentence the defendant as a persistent felony offender, *see People v. Balfe,* 79 A.D.2d 1005, 436 N.Y. S.2d 1000 (2d Dep't 1981), and the precise basis for the decision is unclear. Although the court stated that it modified the judgment "as a matter of discretion in the interest of justice," the only authority mentioned in the one-paragraph decision is N.Y.Crim.Pro.Law § 400.20(1)(b), a section dealing with persistent felony sentencing procedures, rather than the substantive provision (N.Y.Penal Law § 70.10) or the provision allowing exercise of appellate discretion (N.Y.Crim.Pro.Law § 470.15–2(c)).